**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Frederick Ines GORDON,
Defendant–Appellant.**

**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Edward LOESWICK,
Defendant–Appellant.**

**Nos. 86–1061, 86–1062.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 15, 1987.

Decided April 25, 1988.

As Amended on Denial of Rehearing
June 14, 1988.

Frank R. Ubhaus, Ubhaus & Collins, P.C., San Jose, Cal., for defendant-appellant Gordon.

Richard L. Carico, John M. Bekins, San Francisco, Cal., for defendant-appellant Loeswick.

Leida B. Schoggen, Leland B. Altschuler, Asst. U.S. Attys., for plaintiff-appellee.

Before FLETCHER, WIGGINS and NOONAN, Circuit Judges.

WIGGINS, Circuit Judge:

Frederick Gordon and Edward Loeswick appeal from their convictions for conspiracy (Count I), obstruction of justice (Counts II and III), and perjury (Counts IV, V, VI and VII). The convictions arose out of an alleged agreement between Gordon, Loeswick and Vernon Edler to direct Lockheed subcontracts for the Trident Missile to Edler Industries to the exclusion of other potential subcontractors. Appellants claim that their convictions should be reversed because Count I of the indictment was duplicitous, hearsay testimony of a coconspirator was impermissibly admitted, the prosecution failed to turn over exculpatory *Brady* material, an allegedly perjurious statement was immaterial, and the evidence produced at trial was insufficient. We REVERSE on Count I and AFFIRM as to all other counts.

## I.

### FACTS AND PROCEEDINGS BELOW

Lockheed Missiles and Space Company contracted with the Navy Department to design and manufacture hardware for the Trident II Ballistic Missile Program. Frederick Gordon was a mechanical engineer at Lockheed in Sunnyvale, California. He was responsible for designing a ring-

shaped antenna for test missiles and for ordering the necessary parts and materials through the Lockheed purchasing office.

Edward Loeswick was the president of Loeswick's, Inc., an independent manufacturer's representative. Edler Industries was a material supply house in Newport Beach, California that manufactured reinforced plastic parts for the aerospace industry. Vernon Edler was president during most of the period relevant to this proceeding.

From mid–1980 until February of 1981, Gordon spoke with Edler about manufacturing silicon glass panels. Although initially reluctant, Edler agreed to do a small amount of work for Lockheed. In February of 1981, Gordon suggested that Edler hire Loeswick as his local sales representative. On February 11, 1981, Loeswick presented Edler with a letter agreement calling for a 10% commission on all business that Loeswick obtained for Edler. Then in late 1981, Loeswick asked Edler for a 20% commission on future Lockheed contracts. Edler orally agreed but never signed the letter memorializing the agreement.

The government presented evidence at trial that Gordon and Loeswick provided Edler with inside information, enabling Edler to secure Lockheed subcontracts to the exclusion of competitive bidders. Specifically, appellants supplied Edler with Engineering Material Requests ("EMRs"), internal Lockheed documents containing specifications for work to be performed, required delivery dates, and cost estimates. This information enabled Edler to match Lockheed prices and specifications exactly and to order raw materials in advance. In return, Edler treated Gordon and Loeswick to extravagant meals and a trip to Puerto Vallarta. The government also presented evidence that Gordon asked for a $15,000 payoff in return for Edler getting a Lockheed job at a higher price.

During 1983, a federal grand jury began an investigation of possible violations of 41 U.S.C. § 51 et seq., the antikickback statute pertaining to government contractors and subcontractors. The grand jury subpoenaed Loeswick in March of 1984.

Unknown to Gordon and Loeswick, Edler was granted immunity on May 15, 1984. He then called Loeswick to arrange a meeting about the grand jury investigation. Loeswick was reluctant to meet and said that his attorney had advised against it. Nevertheless, Edler, Loeswick and Gordon met on May 21, 1984. Edler wore a body recorder. The three men discussed Loeswick's commission, their trip to Mexico, the expensive meals, and the $15,000 payoff to Gordon.

Loeswick testified before the grand jury on June 19, 1984. He made four statements that later formed the basis for four counts of perjury (Counts IV through VII).

Loeswick and Edler met again in June, 1984 and January, 1985 to discuss the grand jury investigation and the destruction of their respective files.

On February 19, 1985, the government filed an indictment charging Loeswick and Gordon with one count of conspiracy to defraud the United States in violation of 18 U.S.C. § 371 (Count I), and one count of obstruction of justice arising out of the May 21, 1984 meeting, a violation of 18 U.S.C. § 1503 (Count II). Count III charged Loeswick with obstruction of justice arising out of his June 26, 1984 meeting with Edler and charged Gordon with aiding and abetting in violation of 18 U.S.C. § 2. Counts IV through VII charged Loeswick with perjury before the grand jury in violation of 18 U.S.C. § 1623.

At the close of the government's case-in-chief the district court granted Loeswick's motion for judgment of acquittal on Count VI and Gordon's motion for judgment of acquittal on Count III. After a jury trial, Loeswick was convicted on Counts I, II, III, V and VII. The jury found Gordon guilty on Counts I and II. Appellants filed post-conviction motions for judgment of acquittal and for a new trial. The district court implicitly denied these motions.

On January 6, 1986, the district court entered judgment. Loeswick was sentenced to one year on Count I, and one year and one day on each of Counts V and VII.

The sentences on Counts V and VII were to run concurrently to each other and consecutively to the sentence on Count I. Loeswick was fined $5,000 on each of Counts II and III. Gordon was sentenced to eighteen months on Count I and fined $5,000 on Count II. Execution of the sentences was stayed pending appeal pursuant to 18 U.S.C. § 3143(b).

## II.

## DISCUSSION

### A. *Duplicitous Indictment*

Appellants contend that Count I of the indictment was duplicitous because it impermissibly charged two conspiracies in a single count. We review this question of law de novo. *United States v. Aguilar*, 756 F.2d 1418, 1421 (9th Cir.1985). Our task is solely to assess whether the indictment can be read to charge only one violation in each count. *United States v. Mastelotto*, 717 F.2d 1238, 1244 (9th Cir.1983).

■ Assuming that Count I of the indictment was duplicitous, appellants waived this objection by failing to make it before trial. Fed.R.Crim.P. 12(b)(2) requires that defenses and objections based on defects in the indictment be raised prior to trial. Failure to do so, unless for a good cause, constitutes a waiver of the objection. Fed. R.Crim.P. 12(f). Although this court has never been squarely presented with the question of whether duplicity objections must be made pretrial, we have so noted in dicta. *See Mastelotto*, 717 F.2d at 1244 n. 4; *United States v. Westover*, 511 F.2d 1154, 1155 n. 2 (9th Cir.), *cert. denied*, 422 U.S. 1009, 95 S.Ct. 2633, 45 L.Ed.2d 673 (1975).

Appellants cite *Mitchell v. United States*, 434 F.2d 230 (9th Cir.1970), *cert. denied*, 402 U.S. 946, 91 S.Ct. 1636, 29 L.Ed.2d 115 (1971), for the proposition that in this circuit objections to duplicity may be made prior to or during trial. The court in that case stated that "[i]t is the rule in this Circuit that failure to object to duplicity either prior to or during trial, constitutes a waiver of that objection." *Id.* at 231. This language in *Mitchell* is dicta however, be-

cause in *Mitchell* the first objection to the indictment was made at the oral argument on appeal and thus this court rejected the claim. Here, the objection was first made during trial. To the extent that *Mitchell* is inconsistent with *Mastelotto* and *Westover*, we adopt the language of these later cases. These cases follow the unambiguous language of Rule 12(b)(2). Moreover, a duplicity objection can easily be made before trial because a duplicity claim is directed at the *face* of the indictment and not at the evidence presented at trial. *See Mastelotto*, 717 F.2d at 1244. *Mastelotto* and *Westover* are also consistent with the majority of other circuits that have decided the issue. *See United States v. Mosley*, 786 F.2d 1330, 1333 (7th Cir.), *cert denied*, 476 U.S. 1184, 106 S.Ct. 2919, 91 L.Ed.2d 548 (1986); *United States v. Price*, 763 F.2d 640, 643 (4th Cir.1985); *United States v. Lyons*, 703 F.2d 815, 821 (5th Cir.1983); *United States v. Berardi*, 629 F.2d 723, 729 (2d Cir.), *cert. denied*, 449 U.S. 995, 101 S.Ct. 534, 66 L.Ed.2d 293 (1980); *United States v. Sheehy*, 541 F.2d 123, 130 (1st Cir.1976); *United States v. Untiedt*, 493 F.2d 1056, 1059 n. 3 (8th Cir.), *cert. denied*, 419 U.S. 862, 95 S.Ct. 115, 42 L.Ed.2d 98 (1974); *United States v. Frank*, 290 F.2d 195, 196 (3d Cir.), *cert. denied sub nom. Toomer v. United States*, 368 U.S. 821, 82 S.Ct. 38, 7 L.Ed.2d 26 (1961); *but see United ed States v. Costner*, 359 F.2d 969, 974 (6th Cir.1966); *Franklin v. United States*, 330 F.2d 205, 207 (D.C.Cir.1963).

■ In this case Gordon first raised the duplicity issue in his Rule 29 motion at the close of the government's case-in-chief and he has not made any showing of good cause. We conclude that appellants have waived an objection to the *form* of the indictment and their right to force the government to divide Count I into two separate conspiracy counts. Appellants, however, have a right under Article III, sec. 2 and the sixth amendment to a unanimous jury verdict. *See United States v. Echeverry*, 698 F.2d 375, 377 (9th Cir.), *modified*, 719 F.2d 974 (9th Cir.1983). This constitu-

tional claim was not waived.[1]

We find that Count I raised a substantial danger of such a nonunanimous verdict. Count I charged Gordon and Loeswick with:

conspiracy to commit offenses against and to defraud the United States of America as follows:

1. To defraud the United States of America and in particular the United States Navy of its program for the design, development, construction, and distribution of military hardware under the Trident Ballistic Missile Program administered honestly, fairly and free from corruption, deceit, dishonesty and kickbacks;

2. To conceal, cover up; and obstruct an investigation by this Grand Jury into that wrongdoing.

To determine whether Count I charged one or two conspiracies, we look at " 'whether there was one overall agreement among the various parties to perform various functions in order to carry out the objectives of the conspiracy.' " *United States v. Moran*, 759 F.2d 777, 784 (9th Cir. 1985)(quoting *United States v. Jabara*, 618 F.2d 1319, 1327)(9th Cir.), *cert. denied sub nom. Hood v. United States*, 446 U.S. 987, 100 S.Ct. 2973, 64 L.Ed.2d 845 (1980)), *cert. denied*, 474 U.S. 1102, 106 S.Ct. 885, 88 L.Ed.2d 920 (1986). The relevant factors in determining the existence of such an "overall agreement" are the nature of the scheme, the identity of the participants, the quality, frequency and duration of each conspirator's transactions, and the commonality of times and goals. *See United States v. Arbelaez*, 719 F.2d 1453, 1457 (9th Cir.1983), *cert. denied sub nom. Ponce de Leon v. United States*, 467 U.S. 1255, 104 S.Ct. 3543, 82 L.Ed.2d 847 (1984).

 Looking at these factors, we find that Count I charged two conspiracies—one to defraud the United States in the administration of the Trident Missile Program, and another to obstruct the grand jury investigation. The nature of the scheme suggests two conspiracies. The primary agreement between Gordon, Loeswick and Edler was to use inside information to secure government contracts for Edler Industries in return for payoffs. The evidence does not show that the parties contemplated or discussed any plans for a cover-up. We cannot imply a subsidiary conspiracy to conceal the crime. *See Krulewitch v. United States*, 336 U.S. 440, 443, 69 S.Ct. 716, 718, 93 L.Ed. 790 (1949). The conspiracy to obstruct justice was pursuant to a separate agreement, made after Loeswick was subpoenaed by the grand jury. The commonality of time factor also points to two conspiracies. The last kickback transaction occurred in August–September 1983 while the conspiracy to obstruct the grand jury investigation did not begin until Loeswick was subpoenaed in March of 1984.

Because Count I charged two conspiracies, there was a distinct possibility of a nonunanimous jury verdict. Some jurors could have voted to convict Gordon and Loeswick on Count I believing the appellants guilty of conspiracy to obstruct justice but innocent of conspiracy to defraud (or vice versa). When there is such a genuine possibility of jury confusion or that a conviction may occur as the result of different jurors concluding that the defendant committed different acts, the trial judge is obligated to give curative instructions or submit special interrogatories to ensure a unanimous verdict. *See Echeverry*, 719 F.2d at 975.

The trial judge here denied the defendants' request for special interrogatories and for an additional instruction. The jury was obviously confused because during deliberations it sent a note to the judge asking whether it had to find a defendant guilty on both objects to convict on Count I. The judge did not answer the question but instead repeated the general conspiracy instructions. In fact, these instructions may have added to the jury's confusion because the judge referred to a conspiracy to defraud and to a conspiracy to obstruct

---

1. Although appellants never explicitly relied on the Constitution, they raised the problem of a nonunanimous verdict at trial by objecting to the jury instructions and requesting special interrogatories.

justice as two distinct conspiracies. Thus, the district judge erred in failing to cure the risk of a nonunanimous verdict resulting from the duplicitous indictment. We therefore reverse appellants' convictions on Count I.

### B. *Coconspirator Hearsay*

Gordon argues that the trial court erred in admitting hearsay statements of Loeswick against him on Count II, obstruction of justice, because the government failed to make the requisite prima facie showing of a conspiracy to obstruct justice. These allegedly inadmissible statements included taped conversations between Loeswick and Edler on June 26, 1984 and January 28, 1985.

Our standard for review of a district court's ruling that a statement was made in furtherance of a conspiracy is somewhat unclear. In *Bourjaily v. United States,* — U.S. —, 107 S.Ct. 2775, 97 L.Ed.2d 144 (1987), the Supreme Court stated that "[w]e have no reason to believe that the district court's factfinding [regarding the defendant's involvement in the conspiracy] was *clearly erroneous.*" *Id.* 107 S.Ct. at 2782 (emphasis added). The appropriate standard of review, however, was not an explicit holding in *Bourjaily.* Prior to *Bourjaily,* this court applied a stricter standard. We have held that the issue of whether the government has established a prima facie case of conspiracy in its offer of proof is a legal question to be reviewed de novo. *United States v. Rosales,* 584 F.2d 870, 872 (9th Cir.1978). We need not decide whether *Bourjaily* casts doubt on *Rosales* because even under the stricter de novo standard, we find that the district court did not err in admitting Loeswick's statements on tape.

█ Under Fed.R.Evid. 801(d)(2)(E), a statement is not hearsay if made by a coconspirator during the course and in furtherance of the conspiracy. Coconspirator statements are admissible, however, only if

the trial court finds that the government has established the existence of the conspiracy and the defendant's participation in it by a preponderance of the evidence. *Bourjaily,* 107 S.Ct. at 2782. It is clear that the hearsay may be considered in making this determination. *Id.* at 2780–81. In addition, there must be some evidence, aside from the proffered statements, of the existence of the conspiracy and the defendant's involvement. *Rosales,* 584 F.2d at 872.[2] In this case, the May 21, 1984 taped conversation among Loeswick, Edler and Gordon was sufficient by itself to establish the conspiracy to obstruct justice and Gordon's participation in it. Loeswick's statements were thus admissible non-hearsay.

### C. *Sufficiency of the Evidence Against Gordon on Count II*

Gordon also claims that the evidence, independent of the inadmissible hearsay of Loeswick, was insufficient to support his conviction for obstruction of justice.

This argument wholly depends upon Gordon's contention that Loeswick's statements were inadmissible because the government failed to make an independent prima facie showing of a conspiracy to obstruct justice. As discussed above, the district court properly admitted this evidence. Therefore, the evidence was sufficient for the jury to conclude beyond a reasonable doubt that Gordon was guilty on Count II.

### D. *Brady Violation*

Loeswick claims that the government violated *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), by failing to disclose pages from Edler Industries Visitor's Register until the close of the government's case-in-chief. This court reviews de novo challenges to a conviction based on a *Brady* violation. *See United States v. Lehman,* 792 F.2d 899, 901 (9th

---

**2.** The Supreme Court, in *Bourjaily,* 107 S.Ct. at 2781–82, expressly left open the question of whether evidence in addition to the proffered statements is necessary to make the requisite

showing under Rule 801(d)(2)(E). Thus, our prior cases holding such evidence to be necessary remain the law of this circuit.

Cir.), *cert. denied,* —— U.S. ——, 107 S.Ct. 232, 93 L.Ed.2d 158 (1986).

Edler was the government's principal witness at trial. He testified that he first heard of Loeswick on February 11, 1981 when Gordon told him in a telephone call that Edler should hire Loeswick to represent Edler Industries in its dealings with Lockheed. Before Edler testified, the government possessed pages from the Edler Industries Visitor's Register showing that Loeswick visited Edler Industries in December, 1980 and in January, 1981. The government, however, did not mention the documents until after its case-in-chief when it cross-examined Loeswick. Loeswick argues that these documents were impeachment evidence and therefore the prosecution's failure to produce them before trial violated *Brady.*

Under *Brady,* the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or innocence. 373 U.S. at 87, 83 S.Ct. at 1196–97. Favorable evidence includes impeachment evidence. *See Giglio v. United States,* 405 U.S. 150, 154, 92 S.Ct. 763, 766, 31 L.Ed.2d 104 (1972). Assuming the evidence is favorable (either exculpatory or as impeachment), failure to disclose only requires reversal if the evidence is material:

> The evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A "reasonable probability" is a probability sufficient to undermine confidence in the outcome.

*United States v. Bagley,* 473 U.S. 667, 682, 685, 105 S.Ct. 3375, 3384, 3385, 87 L.Ed.2d 481 (1985); *see also United States v. Andersson,* 813 F.2d 1450, 1458–59 (9th Cir. 1987).

■ We need not decide whether the pages from the Visitor's Register were exculpatory and material; no due process violation occurred in this case regardless because the government turned over the documents to the defense. *Brady* does not necessarily require that the prosecution

turn over exculpatory material *before* trial. To escape the *Brady* sanction, disclosure "must be made at a time when disclosure would be of value to the accused." *United States v. Davenport,* 753 F.2d 1460, 1462 (9th Cir.1985); *see also United States v. Shelton,* 588 F.2d 1242, 1247 (9th Cir.1978) (delay in disclosure only requires reversal if it so prejudiced appellant's preparation or presentation of his defense that he was prevented from receiving a fair trial), *cert. denied,* 442 U.S. 909, 99 S.Ct. 2822, 61 L.Ed.2d 275 (1979).

In this case, the documents were disclosed to the defendants while they were still of substantial value at trial. The defense requested all *Brady* material in a pretrial motion on April 22, 1985. The government responded that all *Brady* and *Giglio* material had been or would be provided. The trial began on October 3, 1985. On October 21, 1985, Loeswick's attorney asked if the government had any visitor's logs. Government counsel said yes and that Loeswick's counsel could look at them. On October 22, after the government attempted to introduce the documents, the court recessed to discuss the issue. The court agreed to allow defendants to recall Loeswick and reexamine him about the documents and to recall Edler for further cross-examination. Defendants did not recall either witness but they introduced the documents as defense exhibits. These facts demonstrate that defendants had substantial opportunity to use the documents and to cure any prejudice caused by the delayed disclosure. Therefore, even assuming the documents were exculpatory and material, there was no due process violation under *Brady.*

E. *Materiality of the Grand Jury Question*

Loeswick argues that his conviction for perjury on Count V should be reversed because the question posed was not material to the grand jury investigation. The materiality of a statement in a perjury case is a question of law, reviewed de novo. *See United States v. Dipp,* 581 F.2d 1323, 1328

**1404**

(9th Cir.1978), *cert. denied,* 439 U.S. 1071, 99 S.Ct. 841, 59 L.Ed.2d 37 (1979).

Count V of the indictment charged Loeswick with perjury in violation of 18 U.S.C. § 1623. On June 19, 1984, Loeswick was asked before the grand jury: "Are you aware of any attempt being made to present a common story or set of facts to this grand jury?" Loeswick answered "No." Appellant argues that the question was not material to the grand jury investigation because the grand jury already knew the truthful answer due to the recorded May 21, 1984 conversation.

■ A perjury conviction cannot be sustained unless the false testimony was material to the grand jury investigation. 18 U.S.C. § 1623(a). The government has the burden of proving materiality, but the government need *not* show that the false testimony actually impeded the grand jury investigation:

> It is sufficient for the government to prove that the testimony was relevant to any issue under consideration by the grand jury. If the falsity of the testimony would have the natural tendency to influence the grand jury's investigation, it is material.

*United States v. Kelly,* 540 F.2d 990, 993 (9th Cir.1976), *cert. denied,* 429 U.S. 1040, 97 S.Ct. 738, 50 L.Ed.2d 751 (1977); *see also United States v. Anfield,* 539 F.2d 674, 677–78 (9th Cir.1976); *United States v. Lococo,* 450 F.2d 1196, 1199 (9th Cir. 1971), *cert. denied,* 406 U.S. 945, 92 S.Ct. 2040, 32 L.Ed.2d 331 (1972).

■ In this case, the grand jury was investigating the dealings between Gordon, Loeswick, and Edler. Whether Loeswick was aware of an attempt to develop a "common story" was relevant to whether the grand jury was hearing the truth about these transactions. It is irrelevant that the grand jury already knew the truthful answer to the question. This court rejected a similar contention in *United States v. Ponticelli,* 622 F.2d 985 (9th Cir.), *cert. denied,* 449 U.S. 1016, 101 S.Ct. 578, 66 L.Ed.2d 476

(1980). Ponticelli claimed that his statements were not material because the grand jury already had enough evidence to indict the primary subject of the investigation before Ponticelli testified. The court found that this prior knowledge did not make Ponticelli's statements less relevant. *Id.* at 989.

Therefore, Loeswick's statement was material and we affirm his conviction on Count V.

### F. *Sufficiency of the Evidence*

Loeswick claims that the evidence was insufficient to establish: first, that he conspired to defraud the United States (Count I),[3] and second, that he committed perjury when he testified that he was not aware of Gordon providing information to one government contract bidder giving it a competitive advantage over other bidders (Count VII). The evidence is sufficient to support a conviction if, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *See Jackson v. Virginia,* 443 U.S. 307, 318–19, 99 S.Ct. 2781, 2788–89, 61 L.Ed.2d 560 (1979); *United States v. Marabelles,* 724 F.2d 1374, 1377 (9th Cir.1984).

■ In claiming the evidence was insufficient on Count I, Loeswick attacks several specific allegations or theories of proof advanced by the government. First, Loeswick argues that the government's theory regarding the commencement of the conspiracy was "thoroughly disproved." Second, Loeswick states that the evidence did not support the allegation that Gordon and Loeswick gave inside information to Edler, specifically that there was no credible evidence as to when, how or from whom Edler received Lockheed EMRs. Third, Loeswick argues that the documentation offered by the government did not support the claim that inside information received by Edler

---

**3.** Although we reverse appellants' convictions on Count I on other grounds, we decide the sufficiency of evidence question because a re-

versal for insufficient evidence bars retrial. *See Burks v. United States,* 437 U.S. 1, 18, 98 S.Ct. 2141, 2150–51, 57 L.Ed.2d 1 (1978).

gave it an advantage in being able to purchase materials in advance.

There was evidence in the record to support the government's charges because Edler testified about all three of these issues. Loeswick must therefore be claiming that Edler's testimony is not credible and should have been disregarded by the jury in its entirety. Loeswick states generally that Edler was "impeached by documentary evidence and his own inconsistent statements." Loeswick's statement of the facts offers many alternative explanations for the events testified to by Edler. The only specific examples, however, of impeachment by documentary evidence or inconsistent statements that Loeswick discusses are: 1) the inconsistency between the Edler Industries Visitor's Register and Edler's testimony that he first heard of Loeswick on February 11, 1981, and 2) the inconsistencies between Edler's testimony at trial and his earlier statements regarding the $15,000 payoff to Gordon. As to the first apparent inconsistency, Loeswick may not have spoken to Edler when he visited Edler Industries. The second inconsistency involved only details of the transaction and not the central fact that Edler dropped off a package containing $2,000 at a hotel. Thus, looking at the evidence in the light most favorable to the government, these alleged inconsistencies did not necessarily discredit Edler's testimony on these particular matters, let alone his entire testimony.

Loeswick also argues that Edler was not credible because he had two motives to lie. Appellants, however, cross-examined Edler at length and brought out these possible motives. Questions of credibility are for the jury to decide and are generally immune from appellate review. *See United States v. Hodges,* 770 F.2d 1475, 1478 (9th Cir.1985). This court resolves Edler's credibility in the light most favorable to the government. Assuming the jury believed Edler, the evidence presented by the government was sufficient to sustain Loeswick's conviction on Count I.

Count VII charged Loeswick with perjury for his testimony before the grand jury

that he was not aware that Gordon had provided "information to one bidder that resulted in that bidder obtaining an unfair advantage over other bidders." Loeswick argues that the evidence was not sufficient to support his conviction because no inside information was given to Edler Industries, and because there were no competitive bidders on the contracts in question.

Edler's testimony is sufficient to rebut this argument. For example, Edler testified that he received inside information on five Lockheed subcontracts. Lockheed solicited competitive bids on all these jobs. On two of the jobs other companies submitted bids. And on three other jobs time constraints may have discouraged competitive bids. Inside information supplied to Edler, however, may have enabled Edler Industries to meet deadlines that competitors could not comply with. The jury chose to believe Edler's testimony and this credibility determination will not be disturbed on appeal.

## G. *Entrapment*

Loeswick argues that the evidence was insufficient to establish that he had the predisposition to commit the offenses of conspiracy to obstruct justice (Count I), obstruction of justice (Counts II and III), and perjury (Counts V and VII). He claims that these acts occurred solely at the urging of the government's agent, Vernon Edler. The existence of entrapment is a factual issue for the jury. *See United States v. So,* 755 F.2d 1350, 1354 (9th Cir. 1985). On appeal, the evidence and all inferences therefrom will be viewed in a light favorable to the government. *See United States v. Hermosillo–Nanez,* 545 F.2d 1230, 1232 (9th Cir.1976), *cert. denied,* 429 U.S. 1050, 97 S.Ct. 763, 50 L.Ed.2d 767 (1977).

Loeswick argues that there was no evidence that he was predisposed to obstruct the grand jury investigation until Edler became actively involved in the investigation. Edler set up the meeting on May 21, 1984 over Loeswick's objections. At the meeting, Edler insisted on discussing the upcoming grand jury appearances and de-

veloping a common story. Further, Edler asked Loeswick to contact him after his grand jury appearance and insisted upon another meeting.

■ Entrapment focuses on the defendant's predisposition to commit a crime. In determining predisposition, this court considers five factors: 1) the character or reputation of the defendant, 2) whether the government made the initial suggestion of criminal activity, 3) whether the defendant engaged in the activity for profit, 4) whether the defendant showed any reluctance, and 5) the nature of the government's inducement. *See So*, 755 F.2d at 1354. Although none of these factors is controlling, the defendant's reluctance to engage in criminal activity is the most important. *See United States v. Busby*, 780 F.2d 804, 807 (9th Cir.1986).

■ Considering these five factors, the evidence was sufficient for the jury to conclude that Loeswick was not entrapped. First, Loeswick points out that he had no history of offenses of this kind. This is not determinative, however. The government need not show that the defendant has previously committed similar acts because one may be predisposed to commit his first crime as much, if not more than, a chronic offender. *See United States v. Martinez*, 488 F.2d 1088, 1089 (9th Cir.1973).

Second, Edler testified that Loeswick and Edler discussed the grand jury investigation twice *before* Edler became a government informant. At the second meeting in April, 1984, the two men discussed the Puerto Vallarta trip, specifically that Gordon had repaid Edler. This repayment never occurred. Although Loeswick disputes the content of this conversation, the jury could have reasonably chosen to believe Edler.

As to the third factor, Loeswick clearly engaged in the conspiracy for profit; he received a commission on every contract awarded to Edler Industries. The obstruction of the grand jury investigation was an attempt to protect himself and thereby his profits.

The parties dispute the fourth factor, the degree of Loeswick's reluctance. Edler called Loeswick to arrange the May 21 meeting. Loeswick did say that his attorney had advised against a meeting. Loeswick, however, remained at the meeting without further protest although Edler offered no inducement for him to do so. At the meeting, Loeswick offered explanations of various events for the grand jury. Following his grand jury appearance, Loeswick called Edler to arrange a meeting. At the June 26, 1984 meeting, Loeswick volunteered that he had purged his files. This evidence suggests that although Loeswick was initially wary of discussing the grand jury testimony, he quickly overcame his reluctance and became an active participant in the obstruction of the investigation.

Fifth, Edler never offered Loeswick any inducement to participate in the obstruction of the grand jury investigation. Edler did state repeatedly that he wanted to develop a common story and Loeswick went along with this.

Thus, looking at the evidence in the light most favorable to the government, the first discussions about the grand jury investigation were not initiated by the government because two discussions occurred before Edler became an informant. Moreover, Loeswick quickly overcame his reluctance without Edler offering any inducement. The jury could therefore have reasonably concluded that Edler was not entrapped.

### III.

### CONCLUSION

We conclude that Count I of the indictment charged two conspiracies and that the district court erred in failing to ensure a unanimous verdict through special interrogatories or instructions. Also, we find that the district court did not err in admitting coconspirator statements, that the admissible evidence supported Gordon's conviction on Count II, that the government turned over the alleged *Brady* material to the appellants in time for it to be of use at trial, that the grand jury question was material, and that the evidence was sufficient

to support Loeswick's convictions on Counts I and VII and to support the jury's conclusion that Loeswick was not entrapped. Appellants' convictions are therefore REVERSED and REMANDED on Count I. On remand, the trial court may reconsider its sentence on the remaining counts. The judgment is affirmed on all other counts.