**UNITED STATES of AMERICA, Plaintiff–Appellee,**

v.

**Wilbur H. MILLER, Defendant–Appellant.**

**No. 92–10083.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 5, 1992.

Decided Dec. 8, 1992.

Bram Jacobson, Asst. Federal Public Defender, Phoenix, AZ, for defendant-appellant.

Thomas P. Hannis, Asst. U.S. Atty., Phoenix, AZ, J. Carol Williams, Robert S. Anderson and Robert L. Klarquist, U.S. Dept. of Justice Environment & Natural Resources Div., Washington, DC, for plaintiff-appellee.

Before: BOOCHEVER, NOONAN, and O'SCANNLAIN, Circuit Judges.

NOONAN, Circuit Judge:

Wilbur H. Miller was convicted of conspiracy to violate the Lacey Act, 18 U.S.C. § 371, 16 U.S.C. §§ 3372, 3373, and of specific violation of this Act in selling a saguaro cactus in violation of the law of Arizona. He appeals. We affirm his convictions.

## BACKGROUND

The saguaro is a magnificent species of cactus native to the American southwest. Of the close to 2,000 recorded species of cacti, there are three tribes. Saguaro is a member of the third tribe, subtribe one, constituting both the genus and the species

classified as Carnegeia gigantea. Graf, *Exotica International,* Series 4, vol. 1, 617 (1985). A single plant can be as old as 200 years, weigh eight tons, and reach a height of 35 feet. It is "the most famous and distinctive cactus in the West." Mitch and Bruhn, "The Saguaro—A Bibliography," *Cactus and Succulent Plant Journal (U.S.)* 54, 101 (1983). It is the state flower of Arizona. *C & S Plant Journal (U.S.)* 53, 192 (1981). As the facts in this case show, it can be the object of unlawful taking for the benefit of those covetous of owning for themselves a splendid specimen of this desert candelabrum.

## FACTS

The following facts are the evidence considered in the light most favorable to the prosecution:

Undercover agents posed as dealers in cactus plants whose purpose it was to purchase such plants and to resell them to out-of-state buyers. To maintain their cover the agents associated with both legitimate and illegitimate cactus pullers. On April 3, 1987, Wilbur Miller was present in the residence of a notary when the agents were getting certain documents notarized for the legal out-of-state shipment of cactus. Miller offered to help the agents get better organized in the cactus business and handed Agent Mauldin a brochure indicating that Miller was a seller of cactus. Two days later Agent Mauldin and Agent Jarmuz, accompanied by Wilbur's son Ricky, stopped by a residence where Wilbur was a caretaker. In the ensuing conversation Wilbur asked Ricky if he had shown the agents a cactus known as the Morristown Crest. Ricky said he did not know where the plant was. Wilbur took Ricky aside to give him directions. The next day the agents met Ricky for the purpose of going to see the Morristown Crest. Ricky told them that the agents had just missed his father, who had taken Ricky to the Morristown Crest that morning. Ricky and the agents then drove to this location. It was on state land for which no permit to remove cactus had been issued. One of the agents noticed very recent vehicle tracks in

the vicinity. Agent Jarmuz agreed to pay Ricky $1,200 if he would pull the plant and deliver it to a California location. Ricky said he wanted his father involved in the deal. The agents paid Ricky $500 as a down payment. The next day Ricky told the agents that he had given $200 of the down payment to his father. The plan to pull and transport the Morristown Crest was not carried out and Ricky told Agent Mauldin later that month that he had sold the Morristown Crest to another buyer.

Two years later, in 1989, Agent Mauldin met with Ricky and Wilbur Miller and discussed the $500 down payment made to Ricky. Wilbur criticized the purchaser of the Morristown Crest for buying it from Ricky although knowing that others had made a down payment on it. The Millers offered to sell Agent Mauldin another cactus plant in order to settle the $500 debt. The offer was not accepted.

On November 7, 1989, Agent Mauldin telephoned Wilbur Miller and in the discussion of cactus that had been transported out of state, Wilbur said, "You know us; we go get the best ones."

On December 14, 1989, Agent Mauldin again called Wilbur Miller and asked if he was interested in providing saguaro cactus for a California buyer. Wilbur said he probably would be. The next day Agent Mauldin drove to Wilbur's residence and was guided by Wilbur and his son Tracy to various saguaros. Tracy described to the agents the workings of the Millers' illegal cactus enterprise. The agents agreed to pay $750 for two saguaros pointed out to them by Tracy. In a telephone conversation later that day Wilbur agreed with an agent to deliver these two plants to California. On January 3 Agent Jarmuz travelled to Wilbur Miller's residence and made a $500 deposit on the plants. The money, at Wilbur's direction, was given to his wife, Irene. Wilbur gave the agents a copy of a state permit giving a fictitious place of origin for the two saguaros. The next day the agents loaded the two saguaros onto their truck with Wilbur's assistance and delivered the plants to California.

## PROCEEDINGS

On June 18, 1991 Wilbur Miller and his son Tracy were indicted for a conspiracy beginning April 3, 1987, and continuing through January 1989, to violate the Lacey Act. It was charged that part of the conspiracy was for Wilbur and Tracy to dig up saguaros from their wild growing locations in Arizona for resale in California without complying with the requirements of the Arizona Native Plant Law, Ariz.Rev.Stat. §§ 3–901(C)(1), 3–902(C), 3–904(A). All of these acts charged were alleged to violate 16 U.S.C. §§ 3372(a)(2)(B), 3372(a)(5), 3373(d)(1)(B).

In addition, Wilbur and Tracy were charged with conduct involving the sale and purchase of "one saguaro cactus plant (Cereus giganteus)" of a value in excess of $350, by attempting to sell and transport the plant in interstate commerce from Arizona to California.

Wilbur and Tracy Miller were convicted on both counts. Wilbur Miller appeals.

## ANALYSIS

 Miller challenges the admission pursuant to the co-conspirator's exception to the hearsay rule of the statements of Ricky Miller, contending that the government offered no evidence that Wilbur conspired with Ricky. Wilbur notes that at the first meeting of the agents with him in April 1987 nothing was said about the theft of a cactus and that it was only the next day, after Ricky agreed with the agents to steal the cactus, that Ricky said he wanted to involve his father. This statement, Wilbur adds, proves nothing, especially since Ricky observed to the agents that his father "didn't mess with cactus."

 A co-conspirator's out-of-court statement, standing alone, is insufficient to establish that a defendant had knowledge of and participated in a particular conspiracy. *United States v. Gordon,* 844 F.2d 1397, 1402 (9th Cir.1988). There must be "some evidence aside from the proffered co-conspirator's statement." *United States v. Silverman,* 861 F.2d 571, 577 (9th Cir.1988). This additional evidence will "rarely" be corroborative if the conduct or statements of the defendant were "wholly innocuous." *Id.* at 578. A co-conspirator's statement does not become more reliable "when coupled with evidence of conduct that is completely consistent with defendant's unawareness of the conspiracy." *Id.* It is permissible, however, for a court to consider the corroborating evidence "in light of the co-conspirator's statement itself." *Id.*

The critical piece of evidence here is that in May 1989 Wilbur acknowledged responsibility for honoring the $500 down payment made to Ricky for an illegal saguaro in 1987. That acknowledgment tied Wilbur to Ricky in the conspiracy. It was therefore appropriate to consider Ricky's out-of-court statement that his father had taken him the morning of April 6, 1987, to the Morristown Crest and Ricky's out-of-court statement on April 7, 1987, that he had given $200 of the down payment to his father. That Wilbur had provided the directions to a saguaro on state land as to which no state permit to remove plants had been issued and the recent vehicle tracks at the Morristown Crest were further corroboration of what Ricky said. Ricky's statements were admissible.

 *Identification of the Saguaro.* Wilbur Miller contends that there was no evidence offered that any of the plants were Cereus giganteus. The Lacey Act makes it a federal crime to acquire or sell any plant "taken, possessed, transported, or sold in violation of any law or regulation of any State." 16 U.S.C. § 3372(a)(2)(B). Consequently, the federal law is not violated if the state law is not violated. The Arizona statute specifies "[t]he botanical names of the plants referred to in the article shall in all cases govern in the interpretation of this article." Ariz.Rev.Stat. § 3–901(A). Miller contends that the prosecution failed to prove that he violated state law because it failed to prove that he sold a Cereus giganteus.

 The Arizona statute declares that among "the protected group of plants" are "[a]ll species of the following families: ... cactaceae (cactus family)." Ariz.Rev.Stat.

§ 3–901(C)(1). The Arizona statute does not specify any particular type of cactus as protected, but protects all cactaceae. The Arizona statute was violated when Miller sold and arranged for the transport of a member of the cactus family. Proof of the botanical name of that cactus was unnecessary because the botanical name of the protected plant illegally transported and sold is not an element of the substantive offense created by the Arizona statute. The trial was filled with references to the object of the sale as cactus. The common knowledge of even schoolchildren that saguaro is cactus made expert testimony on its botanical character unnecessary.

Miller makes a slightly different, back-up argument based on the fact that the indictment did specify that the plant sold was "one saguaro cactus plant (*Cereus giganteus*)." The government used the botanical name given to saguaro in 1825. The plant was reclassified in 1908 in honor of Andrew Carnegie as Carnegeia gigantea. Mitch and Bruhn, *supra* at 101. Miller argues that his conviction was based on an impermissible broadening of the indictment, which required proof that the cactus was of the type specified within the description in the indictment. Such exactitude was not required. The indictment gave adequate notice of the charge that Miller had unlawfully taken a species of cactus—the crime in violation of state law that federal law punished. It was unnecessary for the government to prove that the saguaro fell within the botanical description used in the indictment.

AFFIRMED.