124 F.3d 215
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Maximo ZORIO, Defendant-Appellant.
 No. 96-50326.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted August 7, 1997
Decided Aug. 13, 1997.
 
 1
 Appeal from the United States District Court for the Central District of California; D.C. No. CR-94-00768-JSL-2; J. Spencer Letts, District Judge, Presiding.
 
 
 2
 Before: HALL and T.G. NELSON, Circuit Judges, and WINMILL, District Judge.**
 
 
 3
 MEMORANDUM*
 
 
 4
 Maximo Zorio appeals his convictions of conspiracy to distribute cocaine, possession with intent to distribute, and aiding and abetting. We affirm.
 
 
 5
 Zorio asserts the following trial errors: (1) the denial of his motion for a mistrial over the late disclosure of Brady material; (2) improper statements by the prosecutor in closing arguments; and (3) the admission of hearsay testimony of a co-conspirator. We address each in turn.
 
 I. Brady violation
 
 6
 Zorio argues that the prosecution's failure to disclose before trial an immunity agreement between a government witness, Jorge Villarino, and an Assistant U.S. Attorney in Denver violates the requirements of Brady v. Maryland, 373 U.S. 83 (1963). Suppression of favorable evidence, including impeachment evidence, is a constitutional violation if there is a reasonable probability that had the evidence been disclosed, the result of the proceeding would have differed. See Kyles v. Whitley, 115 S.Ct. 1555, 1565 (1995). But if disclosure occurs at a time when it is of value to the defendant, and thus does not prejudice the defendant's case, no violation has occurred. See United States v. Vgeri, 51 F.3d 876, 880 (9th Cir.1995); United States v. Gordon, 844 F.2d 1397, 1403 (9th Cir.1988).
 
 
 7
 We conclude that the late disclosure of the immunity agreement did not prejudice Zorio. The defendant had an opportunity to cross-examine Villarino about the scope of his immunity and his discussions with the Denver prosecutor. The district court also allowed him to re-examine Villarino after reviewing the notes from the Denver debriefing. Zorio thus had a sufficient opportunity to cure any harm caused by the late disclosure. See United States v. Alvarez, 86 F.3d 901, 905 (9th Cir.1996). Furthermore, as the district court pointed out, the timing and nature of the disclosure may have actually benefitted the defendant. By revealing the immunity agreement for the first time on cross-examination, Zorio may have impeached Villarino's credibility far more than if the government had brought it up on direct examination. Villarino also testified that his immunity was broader than it actually appeared to be, which would have further undermined his credibility.
 
 
 8
 Zorio argues that had he known of the immunity agreement from the start, he would not have spent as much time exploring Villarino's legitimate real estate deals. But he admits he used this line of questioning to refute the implication that the real estate transactions involved drug money, even though he knew Villarino was involved in some drug-related criminal activity. Since Zorio was undoubtedly aware that this tactic risked linking him to a member of the conspiracy and still went ahead with it, we do not think the additional information about the immunity agreement would have significantly affected Zorio's approach to the cross-examination.
 
 
 9
 Zorio also asserts a second Brady violation: that the government failed to disclose information about Villarino's informant activities after he stopped working for the Brea police and moved to another state agency. But Zorio has not pointed to any particular evidence that the government failed to produce, and it is not clear that the government in fact had any such information. Furthermore, Villarino did not move to the new agency until well after the events alleged in the indictment had occurred. Zorio contends that Villarino might have been unwilling to testify truthfully to his involvement with the Norgate house because it might have hurt his ongoing informant relationships. But Villarino's work for the second agency was apparently the same as for the Brea police department, and it seems doubtful that he would have been harmed by admitting his past informant activities. In any event, Zorio had every opportunity to develop this theory during his examination and did not do so.
 
 
 10
 Under these circumstances, neither alleged Brady violation warrants a new trial.
 
 II. Improper Remarks in Closing Arguments
 
 11
 Zorio argues that the prosecutor impermissibly vouched for the credibility of several government witnesses during his rebuttal argument. But the statements in question are merely attempts to explain that witnesses lacked a motive to lie and are reasonable inferences from the evidence. See United States v. Necoechea, 986 F.2d 1273, 1279 (9th Cir.1993). They do not refer to evidence outside of the record, and the prosecutor is not suggesting that he has personal knowledge of the witnesses' veracity. Furthermore, the statements appear to be a legitimate response to the defendant's attack on the witnesses' credibility during his closing argument.
 
 
 12
 Zorio further contends that the prosecutor impermissibly shifted the burden of proof by suggesting that the only way the jury could acquit him was to conclude that the government witnesses were lying. In context, though, the prosecutor was challenging defendant's theory of the case, which was that the witnesses were telling the truth about the drug conspiracy except for Zorio's involvement. Moreover, the court's instructions, which followed the argument, properly indicated that the burden of proof rested on the prosecution and that the lawyers' arguments were not evidence. We do not believe that these comments so prejudiced Zorio as to rise to the level of plain error.
 
 
 13
 We also reject Zorio's assertion that the prosecutor improperly inflamed the jury by saying, "Ask yourself this question, why is Max Zorio buying airplane tickets for Colombian drug traffickers if he's not a drug trafficker?" Zorio's purchase of airline tickets was a significant piece of evidence, and the prosecutor was entitled to suggest the inference that Zorio was involved in drug trafficking.
 
 
 14
 III. Admissibility of Co-Conspirator Statement
 
 
 15
 Finally, Zorio challenges the district court's admission of his son's testimony that Yul Vanegas told him that Zorio made money selling drugs. Fed.R.Evid. 801(d)(2)(E) provides that co-conspirator statements are not hearsay when the government establishes the existence of the conspiracy and shows that the statements were made during and in furtherance of the conspiracy. The district court did not err in concluding that the statement was in furtherance of the conspiracy. Statements intended to enlist someone in the conspiracy are deemed to be in furtherance of the conspiracy for purposes of this rule. See United States v. Arias-Villanueva, 998 F.2d 1491, 1502 (9th Cir.1993). Vanegas made the statement while he was attempting to recruit Zorio's son George to transport drugs. George testified that his father's involvement made him feel more comfortable about getting involved himself. Vanegas' statement was properly admitted.
 
 
 16
 Zorio's convictions are AFFIRMED.
 
 
 
 **
 Hon. B. Lynn Winmill, United States District Judge for the District of Idaho, sitting by designation
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3