NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

STATE OF ARIZONA, *Appellant*,

*v.*

GABRIEL PAUL HORCASITAS, *Appellee*.

No. 1 CA-CR 23-0215
FILED 4-4-2024

---

Appeal from the Superior Court in Maricopa County
No.  CR2021-142720-001
The Honorable Michael C. Blair, Judge

**AFFIRMED**

---

COUNSEL

Maricopa County Attorney's Office, Phoenix
By Quinton S. Gregory
*Counsel for Appellant*

Lamm & Associates PLLC, Phoenix
By Jason D. Lamm
*Co-Counsel for Appellee*

Koplow Law Firm
By Lawrence S. Koplow
*Co-Counsel for Appellee*

_____

## MEMORANDUM DECISION

Presiding Judge Samuel A. Thumma delivered the decision of the Court, in which Judge Jennifer B. Campbell and Judge Michael J. Brown joined.

_____

**T H U M M A**, Judge:

**¶1** The State of Arizona appeals from an order vacating defendant Gabriel Horcasitas' conviction and granting him a new trial based on the State's failure to comply with disclosure obligations. Because the State has shown no error, the order is affirmed.

## FACTS AND PROCEDURAL HISTORY

**¶2** In 2021, Horcasitas and the victim were involved in a road rage incident in Chandler, Arizona. The trial evidence indicated that, when both vehicles were stopped at a red light, Horcasitas repeatedly honked at the victim. The victim got out of his truck and, while waving his arms and apparently shouting threats, approached Horcasitas' car. After a few seconds, Horcasitas shot twice; one bullet killed the victim. During the investigation, police impounded cell phones from the victim and Horcasitas.

**¶3** The State charged Horcasitas with: (1) first degree murder, a Class 1 dangerous felony; (2) second degree murder, a Class 1 dangerous felony; (3) drive by shooting, a Class 2 dangerous felony; and (4) three counts of endangerment (with different victims), each a Class 6 dangerous felony. Horcasitas disclosed various defenses, including justification, self-defense, defense of others and accident.

**¶4** Trial began in March 2023. On the seventh day of trial, during the State's case in chief, cross-examination of a detective revealed that police had conducted a "Cellebrite" analysis of the victim's phone. The detective described Cellebrite as "a snapshot download of your phone as it is at the time [] it's presented to . . . the computer crimes detective who does the download." At sidebar, Horcasitas' counsel asserted that the State had not disclosed the victim's cell phone records, asking to further discuss the issue outside of the presence of the jury.

¶5            The next morning, the State moved for a protective order addressing the victim's Google Pixel 2XL cell phone. The motion noted that the police were in the possession of the victim's cell phone, adding that "[d]ue to the nature of the media format and the quantity of the media data [on the cell phone], the victim's identifying and/or locating information cannot be redacted." The motion concluded that "the State is required to disclose" the victim's cell phone "under Rule 15.1 of the Arizona Rules of Criminal Procedure and [] defense counsel may find information . . . that implicates *Brady v. Maryland*," 373 U.S. 83 (1963). The motion "asks that this Court order the . . . cell phone that belonged to the victim be disclosed," subject to a protective order limiting disclosure of the victim's identifying information.

¶6            In addressing the issue outside of the presence of the jury, Horcasitas' counsel argued the State's disclosure was untimely, coming during the third week of trial after he had "committed to defenses" and "shaped defenses through testimony." He added that "[g]oing through a Cellebrite analysis is extremely laborious," involving "double-digit hours" and expert analysis, adding "that the expert whom I normally use is not available to do this anytime soon. So I think there certainly is prejudice at this point." The State told the court it had "requested those [Cellebrite] records yesterday," also referencing a "supplement that discusses those records with regard to Cellebrite and the download from the victim's phone, so he was on notice that the information existed." The State continued: "[w]e didn't receive it, we didn't request it, we didn't ask for it, but [Horcasitas] was on notice that the information existed, and it wasn't as if he made a request for it and we did not provide it to him."

¶7            Later during this exchange, the State indicated that the conclusion in the motion for protective order – that "the State is required to disclose" the victim's cell phone – was "a standard motion for every victim's phone." The State added that the cell phone reports "may have" been first received "in our office this morning." When discussing potential exculpatory information on the cell phone, the prosecutor responded that she "didn't look at the phone," later admitting that no lawyer in her office had done so.

¶8            Noting that the extent of any prejudice could not be determined until the disclosure was provided, Horcasitas reserved the right to move for a mistrial. After discussing the possibility of a mistrial, the superior court granted the motion for protective order, found a discovery violation by the State and deferred appropriate sanctions. The court then

ordered the State to provide Horcasitas with the Cellebrite information that same day.

¶9        After five additional trial days, and deliberation, the jury returned split verdicts, finding Horcasitas: (1) not guilty of first-degree murder; (2) not guilty of second-degree murder, but guilty of the lesser included offense of manslaughter by sudden quarrel or heat of passion; (3) not guilty of drive by shooting; and (4) guilty of one count of endangerment and not guilty of the other two endangerment counts.

¶10       Horcasitas filed a timely motion to dismiss with prejudice, or in the alternative, for a new trial. The motion argued that the Cellebrite analysis of the victim's phone included exculpatory evidence not previously disclosed, including texts relating to the victim's mental state and tendency to "snap[]" while driving in the weeks leading up to the shooting. The State opposed the motion, arguing "there was no *Brady* or Rule 15 violation."

¶11       After oral argument, the court found that the text messages from the victim's cell phone bolstered Horcasitas' self-defense and related justifications and could have mitigated his punishment. The court also found the State had violated its disclosure obligations under both *Brady* and Rule 15.1(b)(8) because it failed to disclose the Cellebrite information to Horcasitas, so he "did not have the opportunity to ferret it out and [] present it to the jury." The court ordered that the victim's full Cellebrite report be turned over to Horcasitas but denied his request for production of the phone itself. Although noting the failure to disclose was not intentional, and a reluctance to set aside a jury verdict, the court granted Horcasitas' motion for new trial and vacated the verdicts but denied his request for dismissal with prejudice. Concluding the State "violated its *Brady* obligations under Rule 15.1(B)(8) in not producing this information," the court noted Horcasitas was entitled to put on a complete defense, that he was prevented from doing so by the failure to provide proper disclosure and concluded that the State "didn't even have a lawyer look at it. That's misconduct in this Court's opinion. Therefore, I'm granting the Motion for New Trial."

¶12　　　　This court has jurisdiction over the State's timely appeal pursuant to Article 6, Section 9, of the Arizona Constitution and Arizona Revised Statutes (A.R.S.) sections 12-120.21(A)(1), 13-4031 and 13-4033(A)(2024).[1]

## DISCUSSION

¶13　　　　The superior court's decision on a motion for new trial is reviewed for an abuse of discretion. *State v. Landrigan*, 176 Ariz. 1, 4 (1993). This discretion is particularly broad, given the trial judge "is in the best position to determine whether the evidence will actually affect the outcome of the trial." *State v. Jones*, 197 Ariz. 290, 304 ¶ 32 (2000). Significant deference is relevant here, where the same judge who presided over the trial is asked to assess whether a criminal defendant was able to present a complete defense in considering a motion for new trial. *See generally State v. Fischer*, 242 Ariz. 44, 50 ¶ 21 (2017) (describing, in reviewing an appeal from a new trial based on a claim the verdict was contrary to the evidence, the deference owed to the trial judge).

¶14　　　　The basis for the new trial was a finding that the State failed to comply with its disclosure obligations under both *Brady* and Rule 15.1. In general, rulings on the adequacy of disclosure are also reviewed for an abuse of discretion. *See, e.g., State v. Roque,* 213 Ariz. 193, 205 ¶ 21 (2006) (citing *State v. Piper*, 113 Ariz. 390, 392 (1976)); *State v. Arvallo*, 232 Ariz. 200, 206 ¶ 36 (App. 2013). Similarly, this court reviews the imposition of sanctions for non-disclosure for an abuse of discretion. *Roque,* 213 Ariz. at 205 ¶ 21(2006) (citing *State v. Armstrong*, 208 Ariz. 345, 353–54 ¶ 40 (2004)).

## I.　　The State Has Not Shown the Superior Court Erred in Finding the State Violated Its Disclosure Obligations.

¶15　　　　The State argues that it met its disclosure obligations under both *Brady* and Rule 15.1 because "the download of the [v]ictim's cell phone was 'made available' to Horcasitas," and "nothing on that phone had any relevance to his guilt." While there is significant overlap between *Brady* and Rule 15.1, decades ago, the Arizona Supreme Court noted that they are not identical. The State's disclosure obligation under Rule 15.1 "is broader than the requirements of *Brady*. There may be violations of Rule 15.1, although arguably harmless, where there is no *Brady* violation." *State v. Jessen*, 130 Ariz. 1, 4 (1981). As applicable here, Rule 15.1(b)(8) directs the State to

---

[1] Absent material revisions after the relevant dates, statutes and rules cited refer to the current version unless otherwise indicated.

"make available to the defendant" any information that "tends to mitigate or negate the defendant's guilt or would tend to reduce the defendant's punishment."

### A. The State Has Not Shown the Superior Court Abused Its Discretion in Finding the State Violated Its Disclosure Obligations Even Though the Evidence Was Provided to Horcasitas During Trial.

¶16 The State argues that it did not violate *Brady* because "Horcasitas received and could have made effective use of the disputed material at trial." The analysis here, however, is under Rule 15.1, and the State has not cited authority suggesting the analysis is the same under that rule. Even if it is the same, although the State is not required to disclose *Brady* material before trial, "[d]isclosure must be made at a time when disclosure would be of value to the accused." *United States v. Gordon*, 844 F.2d 1397, 1403 (9th Cir. 1988).

¶17 Here, Horcasitas did not receive the Cellebrite information until cross-examination of the detective was finished and after the parties were two-thirds of the way through trial. Horcasitas then had to secure the services of an expert, who was unavailable during trial, and review "thousands of text (SMS) and MMS messages." Horcasitas had not finished that undertaking before jury deliberations, when he notified the court of several significant texts he found. Based on these facts, the superior court could reasonably conclude the State's disclosure was too late to "be of value to the accused." *Gordon*, 844 F.2d at 1403. Accordingly, the State has not shown the superior court abused its discretion.

### B. The State Has Not Shown the Superior Court Abused Its Discretion in Finding the State Did Not Sufficiently Disclose the Cell Phone Download to Horcasitas.

¶18 The State argues it met its obligation to make the Cellebrite information available to Horcasitas because, a year before trial, it provided him with a police report. In that report, an officer wrote that on November 17, 2021, he "viewed the forensic download of the victim's cell phone for the time frame before, after, and during the incident. No items of evidentiary value were found. A copy of the forensic download has been preserved by the Computer Crimes Unit should it be needed."

¶19 The superior court found that merely providing Horcasitas with a police report mentioning a "forensic download" was insufficient for the State to meet its disclosure obligations. The State "should have given

the information. They should have given the Cellebrite information, and they should have had an attorney look at it."

**¶20** "Simply stated, the rule is that the prosecution must turn over to the defendant full information regarding any exculpatory evidence it possesses unless the defendant *actually* has knowledge of such evidence." *State v. Jones*, 120 Ariz. 556, 560 (1978) (emphasis added). Here, though Horcasitas had notice that a "forensic download" existed, the record supports the superior court's finding that he did not have any knowledge of the text messages relating to the victim's mental state and driving tendencies.

**¶21** *Jones*, where the State interviewed the defendant's associate but did not disclose several statements made during the interview, is analogous. There, the Arizona Supreme Court found that:

> Under the facts revealed by the record, although the defendant knew that a witness was to be interviewed by the [S]tate, he did not know what exculpatory testimony, if any, would ultimately be revealed to the [S]tate at that interview . . . if [the State is] in doubt as to whether or not a defendant knows of certain exculpatory evidence already known to the [S]tate, reveal it.

*Jones*, 120 Ariz. at 560. Likewise, though Horcasitas may have been notified by the police report that a forensic download of the victim's phone existed, he did not have knowledge of the exculpatory texts found in the download, especially when the report declares that "no items of evidentiary value" were found. On this record, the superior court properly could conclude that the State did not sufficiently disclose the cell phone download.

**C.** **The State Has Not Shown the Superior Court Abused Its Discretion in Finding Rule 15.1(b)(8) Required the State to Disclose the Cellebrite Information.**

**¶22** The State argues it did not violate Rule 15.1 because the text messages found on the victim's phone are "non-material and non-exculpatory evidence." Rule 15.1(b)(8), however, requires disclosure of information that "tends to mitigate or negate the defendant's guilt or would tend to reduce the defendant's punishment." Again, on this record, the superior court properly could conclude that Rule 15.1(b)(8) required the State to disclose the text messages.

¶23     The superior court found the Cellebrite information to be the kind of information Rule 15.1(b)(8) requires be disclosed, noting the State charged Horcasitas with first degree felony murder. The court added: "Wouldn't this information tend to mitigate or negate the defendant's guilt down to a manslaughter charge or tend to reduce his punishment from felony murder down to what the jury found was manslaughter?"

¶24     The State countered that Horcasitas had the opportunity to present his self-defense argument at trial. The superior court, however, noted Horcasitas was "entitled to put on his complete defense," meaning the State had an obligation to disclose the Cellebrite information:

> If [Horcasitas] can argue self-defense, that tends to mitigate the punishment because the punishment for manslaughter is a lot less than drive-by shooting, felony murder . . . And this goes towards self-defense even more. I don't know if it would have persuaded the jury otherwise . . . but [Horcasitas] should have had the opportunity to have that information so he could have used it in preparation for his defense in front of the jury.

¶25     Though the State argued otherwise, the superior court found the Cellebrite information was material to Horcasitas' self-defense claim. *See also* Ariz. R. Evid. 401(b) (using, as a proxy for materiality, that "the fact is of consequence in determining the action"). On this record, the State has not shown the superior court abused its discretion in finding the text messages to be the kind of evidence that must be disclosed under Rule 15.1(b)(8).

## CONCLUSION

¶26     The superior court's order, finding the State unintentionally violated Rule 15.1 and vacating Horcasitas' convictions and ordering a new trial, is affirmed.

AMY M. WOOD • Clerk of the Court
FILED:     AA

8