**UNITED STATES of America, Appellee,**

v.

**Elyakim G. ROSENBLATT,
Defendant-Appellant.**

**No. 631, Docket 76–1443.**

United States Court of Appeals,
Second Circuit.

Argued Jan. 6, 1977.

Decided April 19, 1977.

Robert E. Goldman, New York City (Andrew R. Cooper, Kuh, Shapiro, Goldman, Cooperman & Levitt, P.C., New York City, of counsel), for defendant-appellant.

Angus Macbeth, Asst. U. S. Atty., New York City (Robert B. Fiske, Jr., U. S. Atty., Audrey Strauss, Asst. U. S. Atty., S.D.N.Y., New York City, of counsel), for appellee.

Before MANSFIELD, GURFEIN and MESKILL, Circuit Judges.

MESKILL, Circuit Judge:

The material facts of this unusual conspiracy case are not in dispute. Morris D. Brooks, the appellant's alleged co-conspirator, made false entries in the accounts payable records at the Manhattan Postal Service headquarters where he worked and thereby obtained eight checks totalling over $180,000. The checks were drawn on the United States Treasury and were payable to individuals having no claim to payment from the Postal Service. Brooks was caught and indicted for conspiracy to defraud the United States, 18 U.S.C. § 371. He was also charged with eight counts of falsifying postal records in violation of 18 U.S.C. § 2073. After pleading guilty to conspiracy and to one count of making false entries, he testified against the appellant. Brooks was sentenced to five years imprisonment, but execution of the sentence was suspended, and he was placed on probation for five years.

Appellant, Rabbi Elyakim G. Rosenblatt was the Dean of the Rabbinical College of Queens. At Brooks' request, he "laundered" the eight checks through the college's bank account, and kept roughly ten percent of the face value of the checks for his services. Rosenblatt was indicted, along with Brooks, for conspiracy to defraud the United States. After pleading not guilty, he was tried and convicted by a jury and sentenced to six months imprisonment and a fine of $8,000.

Our difficulty with Rosenblatt's conviction arises from the lack of any agreement between him and Brooks concerning the type of fraud in which they were engaged. It is clear that Brooks was defrauding the United States by obtaining payment for government checks which he had caused to

be printed without authorization. The government stipulated, however, that Rosenblatt did not know the truth about Brooks' activities. Brooks led him to believe that the checks were valid. He told Rosenblatt that the purpose of the laundering operation was to help some payees evade taxes and to help other payees conceal kickbacks on government contracts. In other words, both men agreed to defraud the United States, but neither agreed on the type of fraud. On this appeal, Rosenblatt argues that under 18 U.S.C. § 371 a conspiracy to defraud the United States must be grounded upon agreement on some common scheme or plan.[1] He maintains that proof of an agreement to defraud, without further qualification as to the nature of the fraud, is insufficient to support a conviction under § 371. We agree and reverse the conviction.

*The Lack of Agreement.*

■ A conspiracy is an "agreement *among* the conspirators." *United States v. Falcone,* 311 U.S. 205, 210, 61 S.Ct. 204, 85 L.Ed. 128 (1940) (emphasis added). A "meeting of minds" is required. *Krulewitch v. United States,* 336 U.S. 440, 448, 69 S.Ct. 716, 93 L.Ed. 790 (1949) (Jackson, J., concurring). "[U]nless at least two people commit [the act of agreeing], no one does. When one of two persons merely pretends to agree, the other party, whatever he may believe, is in fact not conspiring with anyone." Developments in the Law—Criminal Conspiracy, 72 Harv.L.Rev. 920, 926 (1959) [hereinafter cited as Developments]; *see Sears v. United States,* 343 F.2d 139 (5th Cir. 1965) (no conspiracy with government informant who secretly intends to frustrate the conspiracy); *Delaney v. State,* 164 Tenn. 432, 51 S.W.2d 485 (1932) (no conspiracy with person who feigns agreement).[2]

■ The law of conspiracy requires agreement as to the "object" of the conspiracy. Developments 929–33. This does not mean that the conspirators must be shown to have agreed on the details of their criminal enterprise, but it does mean that the "essential nature of the plan" must be shown. *Blumenthal v. United States,* 332 U.S. 539, 557, 68 S.Ct. 248, 92 L.Ed. 154 (1947).

The problem of identifying the "essential nature" of the conspirators' plan often arises in cases in which knowledge is in issue. An examination of those cases sheds some light on the degree of specificity that is required as to the agreement. In *Ingram v. United States,* 360 U.S. 672, 79 S.Ct. 1314, 3 L.Ed.2d 1503 (1959), two individuals who had assisted in the operation of a lottery that was illegal under state law were convicted of conspiracy to evade federal wagering taxes for which their employers were liable. The Supreme Court reversed because there had been no evidence that the individuals knew of the tax liability. Absent such knowledge, tax evasion could not have been one of the objectives of their conspiracy, and the convictions could not stand. In contrast, the convictions of the employers for conspiracy to evade taxes were upheld. Similarly, in *United States v. Gallishaw,* 428 F.2d 760 (2d Cir. 1970), the defendant was convicted after a trial judge charged the jury that he could be convicted of conspiracy to rob a bank if he had rented a machine gun to another individual "with the knowledge 'that there was a conspiracy to do something wrong and to use the gun

1. Rosenblatt duly raised this issue in his pretrial motion to dismiss the indictment, at the close of the government's case, at the end of the entire case and in a motion to set aside the jury's verdict.

2. Many jurisdictions have adopted the Model Penal Code's "unilateral" formulation of conspiracy. Under that formulation, conspiracy is defined in terms of one persons' agreeing *with* another, rather than in terms of an agreement *among* or *between* two or more people. *See* Wechsler, Jones & Korn, The Treatment of Inchoate Crimes in the Model Penal Code of the American Law Institute: Attempt, Solicitation, and Conspiracy—Part II, 61 Colum.L.Rev. 957, 965–66 (1961); Note, Conspiracy: Statutory Reform Since the Model Penal Code, 75 Colum.L.Rev. 1122, 1135–45 (1975). The federal definition retains the traditional, common law, "bilateral" formulation.

to violate the law.'" *Id.* at 762. This Court reversed. We said that "at the very least" the government was required to show "that he knew that a bank was to be robbed." *Id.* at 763. We explained that the defendant "had to know what kind of criminal conduct was in fact contemplated." *Id.* at 763 n. 1; *cf. United States v. Calabro,* 467 F.2d 973, 982 (2d Cir. 1972), *cert. denied,* 410 U.S. 926, 93 S.Ct. 1357, 35 L.Ed.2d 587 (1973) (supplier of false identification must have known that it would be used in a transaction involving forged bonds in order to be guilty as an aider and abettor; generalized suspicion of illegal use would not suffice). Thus, it is clear that a general agreement to engage in unspecified criminal conduct is insufficient to identify the essential nature of the conspiratorial plan.

Proof of the essential nature of the plan is required because "the gist of the offense remains the agreement, and it is therefore essential to determine what kind of agreement or understanding existed as to each defendant." *United States v. Borelli,* 336 F.2d 376, 384 (2d Cir. 1964), *cert. denied,* 379 U.S. 960, 85 S.Ct. 647, 13 L.Ed.2d 555 (1965). The importance of making this determination cannot be overstated. "[A]greement is the essential evil at which the crime of conspiracy is directed" and it "remains the essential element of the crime." *Iannelli v. United States,* 420 U.S. 770, 777 n. 10, 95 S.Ct. 1284, 1290, 43 L.Ed.2d 616 (1975). "Nobody is liable in conspiracy except for the fair import of the concerted purpose or agreement as he understands it." *United States v. Peoni,* 100 F.2d 401, 403 (2d Cir. 1938). A conspirator's liability for substantive crimes committed by his co-conspirators depends on whether the crimes were committed "in furtherance of the unlawful agreement or conspiracy." *Pinkerton v. United States,* 328 U.S. 640, 645, 66 S.Ct. 1180, 1183, 90 L.Ed. 1489 (1946). Similarly, the admissibility against a defendant of a co-conspirator's declaration depends on whether the declaration was made "during the course and in furtherance of the con-spiracy." Fed.R.Evid. 801(d)(2)(E). This determination can be made only after the scope of the agreement has been defined. The question of whether single or multiple conspiracies have been pled or proved depends on the nature of the agreement. *United States v. Dardi,* 330 F.2d 316, 327 (2d Cir.), *cert. denied,* 379 U.S. 845, 85 S.Ct. 50, 13 L.Ed.2d 50 (1964). Because overt acts are acts "to effect the *object* of the conspiracy," 18 U.S.C. § 371 (emphasis added), they are defined by reference to the conspiratorial agreement. *United States v. Bayer,* 331 U.S. 532, 542, 67 S.Ct. 1394, 91 L.Ed. 1654 (1947). In addition, when questions arise concerning matters such as venue, *Hyde v. United States,* 225 U.S. 347, 32 S.Ct. 793, 56 L.Ed. 1114 (1912), or the statute of limitations, *Grunewald v. United States,* 353 U.S. 391, 396–97, 77 S.Ct. 963, 1 L.Ed.2d 931 (1957), which depend on the formation of the agreement or the occurrence of overt acts, it becomes "crucial," *id.* at 397, 77 S.Ct. 963, to determine the scope of the conspiratorial agreement. *See Bridges v. United States,* 346 U.S. 209, 224, 73 S.Ct. 1055, 97 L.Ed. 1557 (1953) (statute of limitations). Finally, the punishment that may be imposed under § 371, for a conspiracy to commit an offense against the United States, depends on whether the "object" of the conspiracy is a felony or a misdemeanor. In order to make this determination, specificity with respect to the "object" of the conspiracy is essential.

It is clear that, under the general rules of conspiracy, Rosenblatt could not have been validly convicted of conspiracy to make false entries on postal records, 18 U.S.C. § 2073, the substantive crime with which Brooks was charged, because he had no knowledge of such a plan; he neither intended nor agreed to commit that offense, or any other offense of which Brooks might have been guilty, *e. g.,* 18 U.S.C. § 641 (embezzlement of public money). The only offenses that Rosenblatt "agreed"[3] to aid and abet were tax evasion, 26 U.S.C. § 7201, and taking kickbacks on government con-

---

**3.** When the word "agree" is surrounded by quotation marks, we are using it in the unilateral sense. *See* note 2, *supra.*

tracts, 18 U.S.C. § 874,[4] but since no one else agreed to commit those offenses, a conviction for conspiracy to commit them could not stand.

### Conspiracy To Defraud The United States.

The general federal conspiracy statute prohibits conspiracies "to commit any offense against the United States" or "to defraud the United States . . . in any manner or for any purpose." 18 U.S.C. § 371.[5] These two clauses of the statute overlap when the object of a conspiracy is a fraud on the United States that also violates a specific federal statute. *See generally,* Goldstein, Conspiracy to Defraud the United States, 68 Yale L.J. 405, 436–40 (1959) [hereinafter cited as Goldstein].

When the government proceeds under the conspiracy-to-defraud clause, in cases that could as easily have been brought under the "offense" clause, the courts must be alert to subtle "attempts to broaden the already pervasive and wide-sweeping nets of conspiracy prosecutions." *Grunewald v. United States,* 353 U.S. 391, 404, 77 S.Ct. 963, 974, 1 L.Ed.2d 931 (1957). The terms "conspiracy" and "defraud," when used together, have a "peculiar susceptibility to a kind of tactical manipulation which shields from view very real infringements on basic values of our criminal law." Goldstein 409. Accordingly, conspiracy-to-defraud prosecutions are "scrutinized carefully." *Dennis v. United States,* 384 U.S. 855, 860, 86 S.Ct. 1840, 16 L.Ed.2d 973 (1966).

In the case at bar, the government assures us that the "possible abuse [of the conspiracy-to-defraud clause] need not concern the Court in the context of this case." Brief for the United States at 14. This invitation to hide behind "the context of this case" is tempting, but after considering the result that would follow under the "offense" clause of the statute we conclude that the temptation must be resisted. *Krulewitch v. United States,* 336 U.S. 440, 457, 69 S.Ct. 716, 93 L.Ed. 790 (1949) (Jackson, J., concurring).

Brooks and Rosenblatt "agreed" to commit offenses against the United States, but they did not agree on the same offenses. Therefore, for the reasons discussed above, they were not guilty of conspiracy—at least under the "offense" branch of the statute. The government points out that Brooks and Rosenblatt were indicted for conspiracy to defraud the United States. It argues that agreement on the type of fraud need not be shown when the government elects to invoke the conspiracy-to-defraud clause.

This remarkable argument appears to be based on two related premises. The first is that the phrase "conspiracy to defraud the United States" is sufficient, by itself, to define what the government refers to as the "central nature" of the conspiracy. The second is that, assuming the conspiracy-to-defraud clause will produce a result different from the "offense" clause, the government is free to elect whichever clause will produce a conviction.

---

**4.** By concealing the existence of a check being used in a kickback transaction, Rosenblatt could have been guilty of aiding and abetting the individuals who were taking the kickbacks in violation of 18 U.S.C. § 874. By agreeing to assist, Rosenblatt could have been guilty of conspiracy to commit that offense.

Brooks' "kickback" explanation of the need for laundering two of the checks was an obvious fabrication. Rosenblatt was told that the two payees of the government checks had contracts with the government on which they were getting kickbacks. This makes no sense, for a kickback on a government contract would be unlikely to be paid (1) with a government check, or (2) to the person with the government contract.

**5.** 18 U.S.C. § 371 provides, in full, as follows:

If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined not more than $10,000 or imprisoned not more than five years, or both.

If, however, the offense, the commission of which is the object of the conspiracy, is a misdemeanor only, the punishment for such conspiracy shall not exceed the maximum punishment provided for such misdemeanor.

We reject the argument that the phrase "conspiracy to defraud the United States" is sufficient, without more, to define the "central" nature of the conspiratorial plan. The scope of the phrase "conspiracy to commit any offense against the United States" is extremely broad, for there are many statutes creating offenses against the United States. It is clear, however, that the "offense" clause does not do away with the requirement that there must be agreement as to the same offense. Similarly, the phrase "conspiracy to defraud the United States" is "broad enough in its terms to include any conspiracy for the purpose of impairing, obstructing or defeating the lawful function of any department of Government." *Haas v. Henkel,* 216 U.S. 462, 479, 30 S.Ct. 249, 254, 54 L.Ed. 569 (1910). Nevertheless, this breadth, like the breadth of the "offense" clause, merely relates to the types of criminal conduct that may be prosecuted. It does not eliminate the requirement that there must be an agreement as to the same type of conduct. Both clauses of the conspiracy statute use broad, generic terms which are insufficient, standing alone, to define the "essential nature" of a given conspiratorial plan.

> It is an elementary principle of criminal pleading, that where the definition of an offense, whether it be at common law or by statute, "includes generic terms, it is not sufficient that the indictment shall charge the offense in the same generic terms as in the definition; but it must state the species,—it must descend to particulars.

*United States v. Cruikshank,* 92 U.S. (2 Otto) 542, 558, 23 L.Ed. 588 (1875).

We likewise reject the notion that *Dennis v. United States, supra,* 384 U.S. at 862–64, 86 S.Ct. 1840 authorizes the government to elect between the "offense" and conspiracy-to-defraud clauses, in cases where they overlap, in such a way as to produce the most favorable result.

In *Dennis* the Court made it clear that it was not abrogating the requirement that "the allegation as to conspiracy to defraud . . . properly [reflect] the essence of the alleged offense." 384 U.S. at 863, 86 S.Ct. at 1845; *see United States v. Klein,* 247 F.2d 908, 918 (2d Cir. 1957), *cert. denied,* 355 U.S. 924, 78 S.Ct. 365, 2 L.Ed.2d 354 (1958). *See also United States v. Cruikshank, supra,* 92 U.S. (2 Otto) at 557–58; Goldstein 452 n. 159. More important, the *Dennis* Court made it clear that the use of the conspiracy-to-defraud clause produced no tactical advantage for the government in that case. The petitioner in *Dennis* relied on *Bridges v. United States,* 346 U.S. 209, 223–24, 73 S.Ct. 1055, 97 L.Ed. 1557 (1953), where the Court had rejected a government effort to use the conspiracy-to-defraud clause as a "cloak" to avoid a time bar. The *Dennis* Court was careful to distinguish the earlier case on the ground that the use of the clause in *Dennis* involved no "prosecutorial sleight of hand."[6] Contrary to the government's assertion, *Dennis* did not create an option to be exercised in cases where the two clauses overlap. It simply holds that where the use of the conspiracy-to-defraud clause makes no difference, there will be no reversal. *Compare United*

---

**6.** The potential for abuse in allowing the government to manipulate a prosecution by easy access to the conspiracy-to-defraud clause is clear. The crime of conspiracy to defraud is broader and less precise than that of conspiracy to commit a particular offense. By invoking the former, the scope of the conspiracy appears to increase—thereby increasing the defendant's apparent liability for substantive crimes committed by co-conspirators and the apparent admissibility of declarations made by co-conspirators. Since the number of overt acts would appear to increase along with the scope of the conspiracy, the period of the statute of limitations seems to lengthen, and an argument might be made that the number of districts in which venue can be laid has been increased. In cases where the object of the alleged conspiracy is a misdemeanor which has the effect of defrauding the United States, the government might choose to indict for a conspiracy to defraud, which carries a possible five year penalty, rather than for conspiracy to commit the misdemeanor, which carries the same penalty as the misdemeanor. In addition, the government might opt for a single conspiracy-to-defraud indictment in cases where there is doubt concerning whether a single conspiracy or multiple conspiracies have been committed.

*States v. Chestnut,* 533 F.2d 40, 45 (2d Cir. 1976) (statutory miscitation in indictment ground for dismissal only if accompanied by prejudice). The limited nature of the *Dennis* holding on this point is made clear when the cases relied upon by the Court are examined. The Court cited *Glasser v. United States,* 315 U.S. 60, 66–67, 62 S.Ct. 457, 86 L.Ed. 680 (1942), and *United States v. Manton,* 107 F.2d 834, 839 (2d Cir. 1938), *cert. denied,* 309 U.S. 664, 60 S.Ct. 590, 84 L.Ed. 1012 (1940). The *Glasser* case merely quoted *Manton,* so it is to that case which we must look to understand the holding in *Dennis.* The *Manton* case involved a conviction for conspiracy to obstruct justice and conspiracy to defraud the United States that arose out of a scheme by a Federal Judge to accept bribes in return for favorable decisions. Manton argued, *inter alia,* "that the indictment [charged], and the government sought to prove, a conspiracy to accept and secure bribes, and that this is not an indictable conspiracy." It was apparently Manton's theory that Wharton's Rule barred his prosecution.[7] Justice Sutherland, who wrote for this Court, simply avoided the Wharton's Rule issue by explaining that

> The indictment does not charge as a substantive offense the giving or receiving of bribes; nor does it charge a conspiracy to give or accept bribes. It charges a conspiracy to obstruct justice and defraud the United States, the scheme of resorting to bribery being averred only to be a way of consummating the conspiracy and which, like the use of a gun to effect a conspiracy to murder, is purely *ancillary* to the substantive offense.

107 F.2d at 839 (emphasis added). It was to this statement that the *Dennis* Court referred when it said, "[t]he fact that the events [in furtherance of the conspiracy] include the filing of false statements [an "offense" under 18 U.S.C. § 1001] does not, in and of itself, make the conspiracy-to-defraud clause of § 371 unavailable to the prosecution." 384 U.S. 863–64, 86 S.Ct. 1845–1846. The position that the *Dennis* Court's refusal to reverse. conferred upon the government an affirmative option to invoke whichever clause will be to its tactical advantage finds support in neither *Dennis* nor the cases upon which *Dennis* relied.

■ We hold that when the government proceeds under the conspiracy-to-defraud clause it must plead[8] and prove an agreement with respect to the essential nature of the alleged fraud. Thus, just as the particular offense must be specified under the "offense" branch, *Williamson v. United States,* 207 U.S. 425, 447, 28 S.Ct. 163, 52 L.Ed. 278 (1908), the fraudulent scheme must be alleged and proved under the conspiracy-to-defraud clause.

■ In this case the government neither pled nor proved an agreement on the essential nature of the fraud.[9] Accordingly, Rosenblatt's conviction is reversed, and the case is remanded with instructions to dismiss the indictment.

---

**7.** "An agreement by two persons to commit a particular crime cannot be prosecuted as a conspiracy when the crime is of such a nature as to necessarily require the participation of two persons for its commission." 1 R. Anderson, Wharton's Criminal Law & Procedure § 89, at 191 (1957). The rule is now limited to such crimes as adultery, incest, bigamy and duelling. *See Ianelli v. United States,* 420 U.S. 770, 782, 95 S.Ct. 1284, 43 L.Ed.2d 616 (1975).

**8.** *See United States v. Cruikshank, supra;* Goldstein 452 n. 159.

**9.** The government's primary argument was that "[t]he statute does not require the setting out of any particular type or form of fraud or scheme on which the defendants have agreed." Brief for the United States at 11. As a fallback position the government suggests that the fraud pled and proved here was "a classic one for pecuniary gain." *Id.* We consider this suggested qualification to be inadequate to identify the essential nature of the plan.