**UNITED STATES of America,**

v.

**FREQUENCY ELECTRONICS,
et al., Defendants.**

No. 93–CR–1261 (TCP).

United States District Court,
E.D. New York.

Sept. 8, 1994.

---

**836**

Zachary W. Carter, U.S. Atty., E.D.N.Y., Brooklyn, NY (Peter J. Tomao and Charles D. Kleinberg, Asst. U.S. Attys., of counsel).

Charles A. Stillman and Peter Chavkin, Stillman, Friedman & Shaw, New York City, for defendant Frequency Electronics.

Herald Price Fahringer, Lipsitz, Green, Fahringer, Roll, Salisbury & Cambria, New York City, for defendant Martin Bloch.

Elkan Abramowitz, Morvillo, Abramowitz, Grand, Iason & Silberberg, P.C., New York City, for defendant Abraham Lazar.

Michael Rosen, New York City, for defendant Harry Newman.

Robert L. Ellis, New York City, for defendant Marvin Norworth.

PLATT, Chief Judge.

Defendants have made a voluminous omnibus motion proffering a potpourri of theories mandating the dismissal of part or all of this criminal indictment. The first set of moving papers was addressed to the original indictment. The government superseded that indictment. Defendants then submitted a revised set of motion papers addressed to the superseding indictment. The points raised in both sets of papers that are not moot shall be decided herein. For the sake of congruity, this opinion shall follow the point numbering system utilized by the defendants in their moving papers.

## I. BACKGROUND

Frequency Electronics, Inc., ("FEI"), is an electronics firm in the business of manufacturing quartz and atomic timing systems for government and commercial satellites and deep space probes. FEI was also responsible for manufacturing the advanced timing devices used to track Iraqi SCUD missiles during Operation Desert Storm.

The current indictment arises out of a series of top secret or Black government contracts for the manufacture of space satellites. The government contracted with a company known as TRW, Inc., ("TRW"), and TRW then subcontracted with a number of subcontractors one of which was FEI. FEI commenced work on what it code named the FOX projects beginning in April of 1987. It identified the six contracts as FEI project numbers 11368, 11369, 11370, 11527, 11494 and 11528.

The FOX contracts were not negotiated on a cost-plus basis but rather were what are known as fixed-price contracts. As such, remuneration for them would consist of a predetermined set fee, irrespective of FEI's actual cost outlay in completing the projects. Contracts of this nature typically provide for "milestone" payments consisting of a portion of the contract price to be paid to the subcontractor after it completes a certain portion of the project.

On February 2, 1988 TRW informed FEI that the government had terminated three of the FOX contracts for its convenience and sought to restructure the remaining three. Pursuant to the express terms of the FOX contracts, upon termination of a contract for the convenience of the government, FEI was required to generate settlement proposals. These proposals were to provide TRW with an accounting of FEI's costs that had been expended to date, in order for FEI to receive compensation for such costs.

FEI submitted settlement proposals to TRW for the fully terminated FEI project numbers 11368, 11494 and 11528 and contract pricing proposals for restructured FEI project numbers 11369, 11370 and 11527. The settlement proposals on the terminated contracts were not accepted by TRW, pursuant to which audits of the same were conducted by TRW employees and also by the Defense Contract Audit Agency ("DCAA"). Negotiations also continued with respect to the restructured contracts. FEI and TRW entered into amended subcontracts for the three restructured contracts on December 13, 1988. Certificates of Current Cost or Pricing Data were submitted to TRW in connection with the terminated contracts up until April of 1989.

The government in its superseding indictment filed on April 6, 1994 alleges *inter alia* that FEI at the direction of its officers and directors created false and inaccurate time records and accountings of work expended on the FOX contracts and thereafter destroyed the actual time records that had been maintained by its employees in furtherance of a scheme to submit inflated cost outlay claims on the FOX contracts and defraud the United States. The defendants deny any and all allegations of criminal conduct and move to dismiss the indictment.

## POINT ONE—ENTRAPMENT BY ESTOPPEL

 Defendants assert that the regulatory scheme governing settlement proposals for fixed price contracts terminated at the convenience of the government envisions that upon termination of such contracts, an accounting of cost outlays computed on a best estimate basis must be used. *See* 48 C.F.R. § 49.201(c)[1]. With respect to the FOX contracts, the government knew that FEI did not keep accurate records of time spent on each project and thus had to estimate and often transfer costs from one project to another when asked to account for outlays pursuant to a contractual termination. The government responds that the gravamen of the indictment here is not that FEI estimated its costs but rather that it deliberately falsified and inflated its estimates. Further, the truth or falsity of such an allegation is a question of fact to be determined by a jury. This Court agrees.

Solidly etched in our legal foundation is the notion that an indictment need only be valid on its face to withstand a motion to dismiss, irrespective of the extrinsic evidence or lack thereof in support of the charges alleged therein. *See Costello v. United States,* 350 U.S. 359, 363, 76 S.Ct. 406, 408, 100 L.Ed. 397 (1956), *United States v. Critzer,* 951 F.2d 306, 307 (11th Cir.1992). As the government validly points out here, there are many cases involving fixed price contracts that have crowded our criminal court dockets. *See, e.g., United States v. White,* 765 F.2d 1469 (11th Cir.1985); *Maxwell v. United States,* 277 F.2d 481 (6th Cir.1960). These cases all necessarily involve the critical

---

1. Subpart 49.2 of the Federal Acquisition Regulations, entitled "Additional Principles for Fixed–Price Contracts Terminated for Convenience," states in pertinent part:

 (c) Cost and accounting data may provide guides, but are not rigid measures, for ascertaining fair compensation. In appropriate cases, costs may be estimated, differences compromised, and doubtful questions settled by agreement.

question of whether the defendants acted with the requisite criminal intent to have engaged in the crime of defrauding the government. As such they constitute questions of fact for a jury and may not properly be determined by the Court on a motion to dismiss.

In *Maxwell* the United States Court of Appeals for the Sixth Circuit concluded that after a trial on the merits, the District Court should have dismissed the indictment. *See Maxwell*, 277 F.2d at 510–11. The Court felt that there was absolutely no evidence presented at trial that demonstrated that the claims submitted to the government were the result of an intricate conspiracy to defraud, in violation of 18 U.S.C. § 371. *Id.* at 501. Thus the Sixth Circuit reversed with instructions to discharge the defendants. *Id.*

The facts of the *Maxwell* case are strikingly similar to those at bar. Defendants are accused with conspiring to defraud the government in violation of § 371.[2] This crime requires willful misconduct. Should a trial of the charges alleged in the superseding indictment prove that the defendants did not act with the requisite criminal intent, this Court will have no difficulty in granting a motion for a directed verdict at that time. Any such direction prior to a trial of the issues on the merits, however, would be premature and improper.

### POINT TWO—COUNTS TWO THROUGH FIVE ARE BARRED BY THE EX POST FACTO CLAUSE

The defendants argue that Counts Two through Five of the superseding indictment violate the *Ex post facto* clause of the United States Constitution in that they charge the defendants with criminal conduct that was committed prior to the enactment of the Act that criminalized such conduct. Specifically, defendants note that the Major Frauds Act was enacted on November 19, 1988. The superseding indictment charges the defendants with executing or attempting to execute a scheme to defraud the United States by submitting false claims for payment in

conjunction with the FOX contracts that defendants claim were fully submitted as of August 25, 1988. Thus defendants argue that an *ex post facto* violation has occurred. The government alleges that the scheme to defraud here extended beyond November 19, 1988, by reason of the submission of two false invoices on April 19, 1989, one requesting payment on FEI Project No. 11368 (Count Two) and the other on FEI Project 11494 (Count Three) and signing restructured subcontract papers (Counts Four and Five) on December 13, 1988. This Court agrees.

▪ The *Ex post facto* clause of the United States Constitution [3] embraces the notion that individuals must be accorded fair warning of what type of conduct shall subject them to criminal punishment. *See Marks v. United States,* 430 U.S. 188, 191–92, 97 S.Ct. 990, 992–93, 51 L.Ed.2d 260 (1977); *Cummings v. The State of Missouri,* 71 U.S. (4 Wall) 277, 325–26, 18 L.Ed. 356 (1867). It mandates that a law criminalizing conduct have solely a prospective effect. *See Weaver v. Graham,* 450 U.S. 24, 29–30, 101 S.Ct. 960, 964–65, 67 L.Ed.2d 17 (1981). A law will be *ex post facto* if it applies to events occurring before its enactment and is detrimental to the offender. *See Lindsey v. Washington,* 301 U.S. 397, 401, 57 S.Ct. 797, 799, 81 L.Ed. 1182 (1937). Any *ex post facto* analyses then must focus on the inquiry of whether the law attempts to change the consequences of acts completed before its effective date.

The Major Frauds Act is codified at 18 U.S.C. § 1031 and was enacted on November 19, 1988. Its stated purpose as articulated within the legislative history accompanying the bill was to curtail the ubiquitous and rampant fraud in the defense procurement area, "born of greed in the private sector and inefficiency and acquiescence by the Federal Government." Pub.L. No. 101–123, 1989 U.S.C.C.A.N. 593. It criminalizes the knowing execution or attempted execution of a scheme or artifice in order to defraud the government.[4] In accordance with the legisla-

---

2. For the text of § 371, see Point Eight, *infra.*

3. *See* U.S. Const. art. I, § 9, cl. 3; art. 1, § 10, cl. 1.

4. The Act provides, in pertinent part:

 (a) Whoever knowingly executes, or attempts to execute, any scheme or artifice with the intent

tive history of the Act, the phrase "scheme or artifice" should be interpreted in the same manner as that phrase is interpreted under the mail and wire fraud statutes at 18 U.S.C. §§ 1341 and 1343 respectively, familiarity with which is assumed. *See* Pub.L. No. 100–700, 1988 U.S.C.C.A.N. 5975.

The controversy articulated in the context of this case arises over the terms "execute" or "attempt to execute." Defendants allege that the submission of the original settlement proposals on May 16 and August 25, 1988 constituted the final and finite *actus reus* of any execution or attempted execution of an alleged scheme to defraud the United States. Thus to charge them with a violation of an Act that was passed on November 15, 1988, well after the scheme was over, would unequivocally violate the *Ex post facto* clause. This Court disagrees.

The analysis herein must begin with the definition of the scheme as alleged in the indictment. The government has charged the defendants with knowingly devising and engaging in a scheme to defraud the United States and to obtain money and property by means of false and fraudulent pretenses. Sup. Ind. ¶ 71. This charge mirrors the precise wording of the Act. The government further charges that it was a part of said scheme to "submit and cause others to submit claims to TRW in connection with the [FOX] contracts ... for payment for costs which were not actually all incurred in connection with said contracts." Sup. Ind. ¶ 72. Essentially then the indictment charges the defendants with executing or attempting to execute a scheme to defraud the United States on the FOX contracts by obtaining remuneration from the government in excess of what it actually deserved.

■ Black's Law Dictionary defines the term execute as, *inter alia*, "[t]o fulfill ... the purpose of,...." Black's Law Dictionary 509 (5th edition 1979). This Court shall adopt this definition of the term "execute"

(1) to defraud the United States; or
(2) to obtain money or property by means of false pretenses, representations, or promises, in any procurement of property or services as a prime contractor with the United States or as a subcontractor or supplier on a contract in

and hold that whatever acts taken or attempted by FEI in order to fulfill the purpose of a scheme to defraud the United States on the FOX contracts may properly be called executions of that scheme under the Major Frauds Act.

■ Turning to the facts at bar, upon termination, the FOX contracts required FEI to submit proposals to TRW in order for the corporation to receive payment for costs it had incurred. Should TRW accept these proposals, it would then forward the remuneration requested by FEI. Should the proposals be rejected, however, negotiations on the amount of remuneration would continue until the amounts were approved. Rejection of the original proposals generally would result in a DCAA audit of FEI's records and the submission of Certificates of Current Cost and Pricing Data invoices setting forth the amount of hours expended by FEI on each of the FOX contracts. Such Certificates would be submitted to TRW in an attempt to verify that the information provided by FEI was accurate, complete and current and to prompt TRW to proffer payment accordingly.

FEI's original proposals were rejected by TRW, thus it did not receive payment for work it alleges it had done on the FOX contracts. Further documentation was submitted thereafter in an attempt by the defendants to support the proposals and elicit payment. Negotiations with respect to the claims submitted by FEI on the FOX contracts continued up until at least April 25, 1989 when the "final settlement[s] against termination claim[s]" on the terminated contracts were submitted, and until December 13, 1988 when FEI signed restructured contracts with TRW.

Each of these submissions by FEI to TRW was reasonably calculated to fulfill the ultimate purpose of the defendants' scheme, to wit receiving undeserved monies from the government on the FOX contracts. As such,

which there is a prime contract with the United States, if the value of the contract, subcontract, or any constituent part thereof, for such property or services is $1,000,000 or more shall ... be [subject to criminal penalties].

each act done in furtherance of this scheme under the definition promulgated above may properly be said to constitute a new execution or attempted execution performed in order to promote the advancement of that scheme. *See United States v. Lemons*, 941 F.2d 309, 318 (5th Cir.1991) (mail and wire fraud statutes punish "each act . . . in furtherance of the scheme"). Any execution in furtherance of the scheme committed after the Act was passed may properly bring the entire scheme within its criminal breadth. As· the Second Circuit observed in *United States v. Torres*, the application of a new statute to a crime that began prior to but continued after its effective date does not violate the *Ex post facto* clause. *See Torres*, 901 F.2d 205, 227 (2d Cir.1990).

Since executions or attempted executions with respect to the FOX contracts occurred after the enactment of the Major Frauds Act, defendants' conduct violated the Act. Any *ex post facto* argument then must and hereby does fail.

### POINT FIVE—MAJOR FRAUDS ACT IS UNCONSTITUTIONALLY VAGUE

Defendants allege that the Major Frauds Act is unconstitutionally vague. They state that reasonable people of equal intellect may disagree as to what the terms "execute" or "attempt to execute" connote and whether they encompass "definitive act[s] of a non-continuing nature" only. Def. Memo II at 66. This argument fails for a number of reasons.

■ First, it is firmly established jurisprudence that an analysis centering on the unconstitutional vagueness of a statute not involving the First Amendment must focus on the statute as applied without regard for its facial validity or lack thereof. *See Chapman v. United States*, 500 U.S. 453, 467, 111 S.Ct. 1919, 1929, 114 L.Ed.2d 524 (1991); *United States v. Jackson*, 968 F.2d 158, 161 (2d Cir.), *cert. denied*, —— U.S. ——, 113 S.Ct. 664, 121 L.Ed.2d 589 (1992). Courts utilize a two-part test to determine whether the statute is vague as applied. First a court should determine if the statute "give[s] the person of ordinary intelligence a reasonable opportunity to know what is prohibited and next it may consider whether the law pro-

vides explicit standards for those who apply it." *See Grayned v. City of Rockford*, 408 U.S. 104, 108, 92 S.Ct. 2294, 2299, 33 L.Ed.2d 222 (1972).

■ The superseding indictment in Counts Two through Five charges that the defendants executed or attempted to execute a scheme to defraud the government. Defendants do not contest the allegation that a scheme may have occurred under the definition of the Act. Rather, they question its duration as measured by the potential number of executions or attempted executions committed in furtherance of it. This argument, while interesting, does not serve to make the Act unconstitutionally vague under the *Grayned* test.

As noted by the government on page 67 of its original memorandum submitted in opposition to these motions, "any person who is even passably literate in English" would have an inkling that the submission of fraudulent and padded time cards in an attempt to receive excessive payments would be in violation of the Major Frauds Act. Similarly, as written, the Act would not allow law enforcement officials to allege arbitrarily a violation based upon the vagueness of the terms "execution" and "attempt to execute." A single submission of a fake time card would constitute a violation of the Act in the same manner that thirty-five submissions of fake time cards would constitute thirty-five violations of the Act, so long as all of the submissions were proffered in furtherance of a common scheme to defraud. No common sense reading of the statute would intimate otherwise.

Additionally, since a statute is adjudged based upon its application, one whose conduct is "clearly proscribed" by the same may not successfully challenge it for vagueness. *United States v. Nadi*, 996 F.2d 548, 550 (2d Cir.), *cert. denied*, —— U.S. ——, 114 S.Ct. 347, 126 L.Ed.2d 311 (1993); *see Village of Hoffman Estates v. The Flipside*, 455 U.S. 489, 495 n. 7, 102 S.Ct. 1186, 1191 n. 7, 71 L.Ed.2d 362 (1982). Under the Major Frauds Act, any execution or attempted execution of a scheme to defraud the United States constitutes a violation of the Act. As previously stated, defendants did not contest

the commission of an execution of a scheme by them but rather the extent of such execution. As such, they essentially admitted at least one execution. Therefore, their conduct may properly be said to be clearly proscribed by the statute and any challenge based upon its vagueness proffered by them must and hereby does fail.

Further and independent of the above analysis, the Courts of this Circuit have sustained the validity of the Act in the face of a challenge for vagueness. *See Nadi*, 996 F.2d at 552.[5]

## POINT EIGHT—COUNT ONE IS DUPLICITOUS IN THAT IT CHARGES MORE THAN ONE CONSPIRACY

Defendants argue that the § 371 conspiracy charged in Count One of the superseding indictment is duplicitous in that it charges two separate and distinct conspiracies, to wit a conspiracy to defraud the government and a conspiracy to conceal and destroy time records. They further charge that Count One is defective in the way it charges a § 371 conspiracy in that it does not plead with specificity the essential nature of the fraudulent scheme the government intends to prove at trial. Finally, defendants urge that a conspiracy to defraud the government must involve more than an incidental interference with a governmental function and the same is not alleged here. Defendants' arguments are all without merit.

The general conspiracy statute codified at 18 U.S.C. § 371 makes it unlawful to conspire to defraud the United States or to commit an offense against the United States that is specifically defined by another federal statute.[6] 18 U.S.C. § 371; *see United States v. Helmsley*, 941 F.2d 71, 90 (2d Cir.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 1162, 117 L.Ed.2d 409 (1992). The two alternatives articulated under § 371 overlap when the object of a conspiracy to defraud the United States is also violative of a specific statutorily defined federal offense. *See United States v. Nakashian*, 820 F.2d 549, 553 (2d Cir.), *cert. denied*, 484 U.S. 963, 108 S.Ct. 451, 98 L.Ed.2d 392 (1987); *United States v. Rosenblatt*, 554 F.2d 36, 40 (2d Cir.1977).

The potential of conspiracies pled under § 371 to become licenses for veritable prosecutorial free-for-alls is evident. Judge Learned Hand called the general conspiracy statute "the darling of the modern prosecutor's nursery," and rightfully so. *Harrison v. United States*, 7 F.2d 259, 263 (2d Cir. 1925). The broad statutory language of a § 371 "conspiracy to defraud" in "any manner for any purpose" essentially places no restrictions upon the methods the government may charge that one utilized in order to defraud the United States. *See Tanner v. United States*, 483 U.S. 107, 129, 107 S.Ct. 2739, 2752, 97 L.Ed.2d 90 (1987). These extremely expansive parameters may permit an adroit prosecutor to plead in general terms the allegations of the conspiracy, thereby avoiding the articulation of particulars while concomitantly thwarting the preparation of an adequate defense. *See Dennis v. United States*, 384 U.S. 855, 860, 86 S.Ct. 1840, 1843–44, 16 L.Ed.2d 973 (1966); *Grunewald v. United States*, 353 U.S. 391, 404, 77 S.Ct. 963, 973–74, 1 L.Ed.2d 931 (1957). As a result, indictments alleging a conspiracy to defraud under § 371 are subjected to serious and careful scrutiny. *See Dennis*, 384 U.S. at 860, 86 S.Ct. at 1843–44.

■ To plead properly a § 371 conspiracy, the government must allege with specificity the particulars involved in perpetrating a conspiracy engaged in "for the purpose of impairing, obstructing or defeating the lawful function of any department of Government."[7]

---

**5.** The *Nadi* court wrote that "[s]ection 1031 is sufficiently clear and narrow in scope to eliminate potentially vague and arbitrary enforcement," and thus defendants' argument that it was unconstitutionally vague as applied failed. *Id.* at 552.

**6.** 18 U.S.C. § 371 reads, in pertinent part:

If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined not more than $10,000 or imprisoned not more than five years, or both.

**7.** The Supreme Court has held that alleging the United States as the target of the fraud is the most important element of a § 371 conspiracy

*Haas v. Henkel,* 216 U.S. 462, 479, 30 S.Ct. 249, 254, 54 L.Ed. 569 (1910); *see United States v. Cruikshank,* 92 U.S. 542, 558, 23 L.Ed. 588 (1875). It is not sufficient merely to state that a conspiracy to defraud the United States existed. Rather the central aim of the substantive nature of the conspiracy must be elucidated. *See Rosenblatt,* 554 F.2d at 41.

■ It is axiomatic that a § 371 conspiracy may allege a conspiracy with an object that is violative of multiple statutes. Such an allegation in a criminal indictment will not be duplicative. As the Supreme Court stated in *Braverman v. United States:*

> The allegation in a single count of a conspiracy to commit several crimes is not duplicitous, for "The conspiracy is the crime, and that is one, however diverse its objects." The single agreement is the prohibited conspiracy, and however diverse its objects it violates but a single statute ...

317 U.S. 49, 54, 63 S.Ct. 99, 102, 87 L.Ed. 23 (1942) (quoting *Frohwerk v. United States,* 249 U.S. 204, 210, 39 S.Ct. 249, 252, 63 L.Ed. 561 (1919)).

The defendants, while agreeing with the law articulated above, urge this Court to distinguish the aforementioned cases from the case at bar. They argue that separate conspiracies exist when each of the conspirators' agreements has its own end and each end is itself an offense, to be proven by independent and exclusive sets of facts. *Blumenthal v. United States,* 332 U.S. 539, 558–59, 68 S.Ct. 248, 257, 92 L.Ed. 154 (1947). While this argument is a correct statement of the law, it is inapposite to the case at bar.

■ As pled in the superseding indictment, the defendants are charged in Count One with conspiring to defraud the government in violation of 18 U.S.C. § 371 by i) submitting and causing others to submit false and fictitious claims for payment against the government in violation of 18 U.S.C. § 287;

and ii) knowingly and willfully attempting to disguise the falsity of such submissions by concealing material facts relevant thereto in violation of 18 U.S.C. § 1001. The mere fact that more than one offense has been committed, vis-a-vis the violation of more than one federal statute, does not in and of itself warrant a finding that more than one conspiracy existed and must have been pled.

An appropriate analogy would be to a narcotics conspiracy charge. In the case of such a charge, one count in an indictment may properly allege a conspiracy to import a controlled substance in violation of 21 U.S.C. § 963 with possession with intent to distribute and to distribute in violation of 21 U.S.C. § 841. The rationale underlying the aforementioned is that the conspiracy as pled was initiated to effect one common goal or plan.[8] Multiple crimes committed in furtherance of that plan may be independent in and of themselves but may still properly be considered part of one overall conspiracy.

Defendants urge this Court to follow the Ninth Circuit's ruling in *United States v. Gordon* and hold that the conspiracy to defraud the United States was separate and thus must be pled separately from the conspiracy to conceal the fraud. *United States v. Gordon,* 844 F.2d 1397, 1401 (9th Cir.1988). The *Gordon* court took its cue from the Supreme Court's holding in the *Grunewald* case. *See Grunewald v. United States,* 353 U.S. 391, 405, 77 S.Ct. 963, 974, 1 L.Ed.2d 931 (1957). In *Grunewald,* the Court articulated a "vital" distinction between "acts of concealment done in furtherance of the main criminal objectives of the conspiracy, and acts of concealment done after these central objectives have been attained, for the purpose only of covering up after the crime." *Id.* 353 U.S. at 405, 77 S.Ct. at 974.

Although similar to the facts at bar, *Gordon* was decided after a full trial on the merits. The Ninth Circuit felt that the evi-

charge. *See Tanner,* 483 U.S. at 130, 107 S.Ct. at 2752.

**8.** The standard conspiracy jury charge utilized by this Court for twenty years states:
What the evidence in the case must show beyond a reasonable doubt, in order to establish

proof that a conspiracy existed, is that the members in some way or manner, or through some contrivance, positively or tacitly came to a mutual understanding to try to accomplish a common and unlawful plan.

dence elicited at trial proved that there were two separate and distinct conspiracies that existed—a conspiracy to defraud the government and a conspiracy to conceal and cover up the fraud. However, the Court of Appeals found that the conspiracy to cover up the illegal acts was formed pursuant to a separate agreement that occurred after the first conspiracy had ended." *Id.* at 1401 (emphasis added). This separation in time of the two conspiracies is what served to convince the courts in both *Grunewald* and *Gordon* that two distinct conspiracies existed and should have been charged separately. *Id.*

Such a separation has not been alleged here, and until proven at trial, may not properly serve as a ground to dismiss Count One of this indictment. In accordance with Second Circuit precedent, a single conspiracy may consist of a substantive act, the obstruction of the investigation of that act and various acts of concealment directed towards that act. *See United States v. Potamitis,* 739 F.2d 784, 788 (2d Cir.), *cert. denied,* 469 U.S. 934, 105 S.Ct. 332, 83 L.Ed.2d 269 (1984). Such a conspiracy has been pled here.

At this juncture the Court believes that the indictment is facially valid as it charges a single, multi-objective conspiracy. As such it shall survive a motion to dismiss. Should the evidence at trial required to prove the conspiracy to defraud prove to be different from that necessary to prove the conspiracy to conceal, then the existence of two separate and distinct conspiracies may have been established and a renewal of defendants' argument may then be entertained.

Defendants' allegations that the superseding indictment does not specifically plead the nature of the conspiracy is unfounded. This Court refers them to ¶¶ 28–38 of the superseding indictment which describe the conspiracy and ¶¶ 39–69 which discuss the overt acts committed in furtherance of it.

The denial of defendants' assertions that the indictment does not allege more than an incidental interference with a governmental function is supported herein with the same amount of support this argument received in defendants' brief—none.

## POINT TEN—COUNT ONE OF THE SUPERSEDING INDICTMENT IS BARRED BY THE STATUTE OF LIMITATIONS

The statute of limitations on § 371 conspiracy claims is five years. *See* 18 U.S.C. § 3282. Defendants urge this Court to determine that "the only ... pertinent events supporting the charges in the new indictment occurred prior to April 6, 1989." Def. Memo II at 48. Defendants then seek the finding that the superseding indictment repleading Count One as a § 371 conspiracy from a § 286 conspiracy broadens the charges contained in the original indictment. Therefore the filing date of the superseding indictment does not relate back to the filing of the original indictment for statute of limitations purposes. Since the superseding indictment was filed in April 6, 1994, the Court should find that any conduct committed prior to April 6, 1989 is time barred. This Court does not so find.

Vital to our sense of justice is the notion that we may not subject someone indefinitely to the threat of potential criminal punishment. Rather, certain statutory time periods have been established by the legislature to insure an individual's prompt accusation of a crime so as to place him or her on notice as expeditiously as possible that he or she may have to account for his or her actions. *See United States v. Marion,* 404 U.S. 307, 322–23, 92 S.Ct. 455, 464–65, 30 L.Ed.2d 468 (1971). As the Supreme Court wrote:

> The purpose of a statute of limitations is to limit exposure to criminal prosecution to a certain fixed period of time following the occurrence of those acts the legislature had decided to punish by criminal sanctions. Such a limitation is designed to protect individuals from having to defend themselves against charges when the basic facts may have become obscured by the passage of time and to minimize the danger of official punishment because of acts in the far-distant past.

*Toussie v. United States,* 397 U.S. 112, 114, 90 S.Ct. 858, 860, 25 L.Ed.2d 156 (1970). Thus the government must investigate and charge within that time period or be barred forever more.

Once an indictment is brought, the statute is tolled with respect to all charges contained therein. *United States v. Feinberg,* 383 F.2d 60, 64–65 (2d Cir.1967), *cert. denied,* 389 U.S. 1044, 88 S.Ct. 788, 19 L.Ed.2d 836 (1968). The statute will commence again on those charges only upon the dismissal of the indictment. *United States v. Grady,* 544 F.2d 598, 601 (2d Cir.1976). Any superseding indictment brought while the original indictment remains validly pending then relates back to the filing of the original indictment and is not subject to an attack on statute of limitations grounds. *See United States v. Strewl,* 99 F.2d 474, 477 (2d Cir. 1938), *cert. denied,* 306 U.S. 638, 59 S.Ct. 489, 83 L.Ed. 1039 (1939) and 332 U.S. 801, 68 S.Ct. 92, 92 L.Ed. 381 (1947). An important caveat to the above is that a superseding indictment may not "broaden or substantially amend" the charges alleged in the original indictment and have those charges withstand a statute of limitations challenge. *See Grady,* 544 F.2d at 602; *see generally Ex parte Bain,* 121 U.S. 1, 7–9, 7 S.Ct. 781, 784–85, 30 L.Ed. 849 (1887).

Defendants do not contest the fact that the superseding indictment was brought while the original indictment was still validly pending. Rather, they argue that to charge a general § 371 conspiracy after the more narrow § 286 conspiracy constitutes an enhancement of the criminal conduct at issue and thus broadens impermissibly the scope of the indictment. Specifically they argue that in the superseding indictment Count One charges that each defendant conspired to make false statements to the government in violation of 18 U.S.C. § 1001, a violation not charged in the original indictment. Accordingly, the Count is subject to a valid statute of limitations challenge. Def. Memo. II at 49. This Court disagrees.

What is required of the Court when conducting a comparative analysis of two indictments is a meticulous perusal of the documents while remaining mindful of the "judicial policy favoring repose in close cases." *United States v. Marion,* 404 U.S. 307, 322 n. 14, 92 S.Ct. 455, 464 n. 14, 30 L.Ed.2d 468 (1971). While repose is favored, it is not automatic. Amendments of form as opposed to substance are permissible, as are those which may be characterized as "trivial, useless, [ ]or innocuous." *Stirone v. United States,* 361 U.S. 212, 217, 80 S.Ct. 270, 273, 4 L.Ed.2d 252 (1960); *See Russell v. United States,* 369 U.S. 749, 770, 82 S.Ct. 1038, 1050, 8 L.Ed.2d 240 (1962). So long as the defendants may be said to have been put on notice of the criminal acts they are alleged to have committed in order to allow them to prepare adequately a defense to the same, the protective purposes of the criminal statute of limitations will have been served.

In the instant case, the original indictment charged the defendants with a number of overt acts in furtherance of a § 286 conspiracy. Orig. Ind. ¶¶ 35–65. The superseding indictment, although it altered the first count to a § 371 conspiracy, charged the exact same overt acts using the exact same language. Sup. Ind. ¶¶ 39–69. Thus, while the classification of the conspiracy may have been altered, the conduct comprising the conspiracy did not. Further, ¶ 29 of the original indictment charges that the defendants:

> "would charge and cause others to charge labor costs to the subject Fox contracts knowing that said costs had not been incurred ... and knowing that said false information would be furnished to the United States...."

In light of the foregoing, defendants may not argue in good faith that they did not have notice of all of the charges against them. Further, if the amendment to the charge here may not be classified as harmless or innocuous, this Court feels that it would be impossible ever to find one that was.

Defendants' argument that a conspiracy may not be extended for statute of limitations purposes by acts of concealment occurring after the criminal object is accomplished is a correct statement of the law but in light of the analysis set forth above is immaterial here, since the acts of the conspiracy to conceal themselves are alleged to have been committed well within the limitations period. Accordingly, the challenge to this indictment based upon statute of limitations grounds must and hereby does fail.

**POINT ELEVEN—COUNTS TWO THROUGH FIVE ARE DUPLICITOUS AS THEY CHARGE TWO SEPARATE CRIMES**

Defendants argue that Counts Two through Five must be dismissed as they charge two or more offenses in the same count and are therefore duplicitous. *See* Fed.R.Crim.Pro. 8(a) (mandating separate count for each offense charged in indictment). They claim that the superseding indictment alleges two separate crimes—to defraud the United States AND to obtain money by false pretenses. Since a jury may evaluate the intent to defraud on a different basis from the intent to submit false statements, different verdicts on the same count may be required. When such is the case, courts have held that the count must be dismissed. *See United States v. Gibson,* 310 F.2d 79, 80 n. 1 (2d Cir.1962). The government argues that only one execution or attempted execution is alleged to have occurred in each count committed in violation of the Major Frauds Act and thus only one crime has been pled in each Count. This Court agrees.

 The Second Circuit has recognized that "[i]f the doctrine of duplicity is to be more than an exercise in mere formalism it must be invoked only when an indictment affects the policy considerations" underlying the same. *See United States v. Murray,* 618 F.2d 892, 897 (2d Cir.1980). Such policy considerations include the protection of a defendant's rights to notice of the charges he must defend himself against, to a unanimous jury verdict and to assert double jeopardy in a subsequent prosecution for the same offense. *See United States v. Margiotta,* 646 F.2d 729, 733 (2d Cir.1981), *cert. denied,* 461 U.S. 913, 103 S.Ct. 1891, 77 L.Ed.2d 282 (1983). If more than one crime is pled in one count of an indictment the policy considerations listed above are implicated, and the Court should dismiss that count as duplicitous. *See Murray,* 618 F.2d at 896. However if a count merely charges the commission of one offense vis-a-vis different means, it will not be duplicitous. *See United States v. Berardi,* 675 F.2d 894, 897 (7th Cir.1982); *United States v. Schwartz,* 899 F.2d 243, 246 (3rd Cir.1990); *United States v. Droms,* 566 F.2d 361, 363 (2d Cir.1977).

 Counts Two through Five of the superseding indictment charge the defendants with four violations of the Major Frauds Act. As explained above, the Act criminalizes the execution or attempted execution of a scheme to defraud the United States OR to obtain money by false pretenses from the United States. *See* 18 U.S.C. § 1031(a)(1–2). Defendants do not argue that any of the policy concerns underlying the duplicity doctrine have been implicated. Rather, they assert that since the indictment charges them with a scheme to defraud the government AND to obtain money by false pretenses it charges two crimes and thus is duplicitous. This argument is not well taken.

Both acts charged in Counts Two through Five constitute a violation of one statute. They are not two crimes, but two ways to commit the same crime. Irrespective of whether the jury finds that the defendants schemed to defraud the United States or tried to obtain money by false pretenses, or BOTH, in any Count charged, the acts would comprise only a single execution. Thus defendants would be guilty of only one violation of the Act. This is not duplicative but a rudimentary principle of criminal law.

This Court does not believe that the defendants could seriously be arguing that the scheme to defraud would have to be pled in a separate count from the scheme to obtain money by false pretenses in order to avoid duplicity here. Assuming *arguendo* that they were and that the charges were so pled, this Court would then have to entertain a motion to dismiss the Counts as multiplicitous. It will not condone this type of cat-and-mouse game.

Accordingly, defendants allegations of duplicity must be and hereby are rejected.

**POINT TWELVE—COUNTS TWO THROUGH FIVE ARE MULTIPLICITOUS**

 An indictment will be multiplicitous if it "charges a single offense in more than one count." *See United States v. Seda,* 978 F.2d 779, 780 (2d Cir.1992), (quoting *United States v. Maldonado–Rivera,* 922 F.2d 934, 969 (2d Cir.1990), *cert. denied,* 501 U.S. 1233, 111 S.Ct. 2858, 115 L.Ed.2d 1025 (1991)).

Defendants argue, and surprisingly so in light of their various other arguments, that the four acts alleged in Counts Two through Five are all a single execution of the original scheme. Thus, to allege them in four separate counts is multiplicative. Defendants attempt to bolster this argument with the observation that, although the Counts allege more than one submission of documents concerning more than one FOX contract, "no attempt to defraud the United States on one such contract 'could succeed without the other,'" and refer this Court to the Fifth Circuit's decision in *United States v. Heath,* 970 F.2d 1397 (5th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1643, 123 L.Ed.2d 265 (1993). This argument is both confused and confusing.

Defendants' argument that the attempt to defraud on one contract depended upon another is not only incorrect but it is irrelevant. In the first instance, defendants easily could have submitted padded time cards in connection with only one of the six FOX contracts. Should TRW have paid them in conformance with their proposals, they would still properly be chargeable with violating the Major Frauds Act, even though the rest of the FOX contract submissions were legitimate.

Secondly, and more importantly, it is irrelevant that one execution may not succeed without the other. The Major Frauds Act does not criminalize the scheme or artifice to defraud itself. Rather, it is each execution or attempted execution of the scheme that is prohibited. Such executions or attempted executions are punishable under the Act regardless of whether the scheme itself is ever brought to fruition.

Lastly, if there were one FOX contract or one-hundred-and-one FOX contracts, defendants would still be chargeable under the Major Frauds Act for each execution or attempted execution performed in furtherance of a scheme to defraud the United States. If defendants performed ten executions with respect to one FOX contract in furtherance of a scheme to defraud the government, defendants would be guilty of ten violations of the Major Frauds Act. If there were two executions on each of ten FOX contracts in furtherance of a scheme to defraud the government, defendants would be guilty of twenty executions of the Major Frauds Act.

The Court would finally like to note that *Heath* comports with its analysis above and contradicts by its express terms the very point defendants weakly attempt to establish here. The Court in *Heath* was presented with various acts alleged to have been committed in violation of the bank fraud statute. *See Heath,* 970 F.2d at 1401–02. In finding that two separate loans constituted one execution of a single scheme to defraud, the argument defendants have unsuccessfully proffered here, the Court noted:

> In *Lemons,* we stated that "the bank fraud statute imposes punishment only for each execution of the scheme." (citation omitted). Thus, unlike the mail or wire fraud statutes, the bank fraud statute does not allow punishment for each act in execution of a scheme or artifice to defraud.

*Id.* at 1402 (emphasis added).

As stated above at Point Two, the Major Frauds Act is to be analogized to the mail and wire fraud statutes. Each separate submission by FEI of materials to supplement its remuneration claim made in furtherance of a scheme to defraud the government on the FOX contracts constitutes a distinct execution or attempted execution of the scheme. Thus each additional Certificate of Cost and Current Pricing, each time card with padded hours, and each restructured contract based upon inflated prior cost outlays on the FOX contracts submitted by FEI is punishable as a separate violation of the Major Frauds Act.

Accordingly, Counts Two through Five are not multiplicitous and must stand.

### POINT THIRTEEN—COUNTS FOUR AND FIVE DO NOT CONSTITUTE COGNIZABLE FEDERAL CLAIMS

Defendants allege that the negotiation of a restructured contract does not constitute a violation of any federal law as it does not constitute a claim against the United States. There is no requirement under the Major Frauds Act that "claims" against the United States be submitted in furtherance of the scheme to defraud.

To reiterate yet again, the Act makes it unlawful to defraud the United States or to obtain money from the United States by false pretenses or representations. Counts Four and Five of the superseding indictment allege that the defendants defrauded the United States when they signed restructured contracts seeking, *inter alia* inflated payments for "work done prior to receipt of the notice of termination." Sup. Ind. ¶ 82. As pled then, the signing of the restructured contracts by the defendants were each another execution or attempted execution of the single scheme to defraud the government and receive monies to which they were not entitled. Accordingly, Counts Four and Five are cognizable offenses under the Major Frauds Act and must stand.

## CONCLUSION

For all of the reasons mentioned herein, the defendants' motions must be and hereby are denied in their entirety.

SO ORDERED.